GEORGE M. KINGSBURY v. GEORGE THARP.

*Partnership—If no dispute as to terms of agreement, court should instruct
    jury as to its legal effect — Profit-sharing, as compensation for ser-
    vices—Rule that it does not constitute parties copartners not applicable
    where both parties contribute to capital stock—And agreement is not
    limited as to duration nor confined to single venture—Bill of sale by one
    partner to secure private debts cannot affect rights of copartner in
    joint property, unless ratified—Question of ratification is for the jury—
    Vendee can, at the most, only claim to succeed to vendor's rights—Has
    no right to change possession of the property—Or make any specific
    division thereof—Takes subject to satisfaction of partnership debts—And
    legal claims of other partner—Trover will not lie at suit of vendee if
    there are outstanding partnership debts.*

1.  Defendant and one Leach agreed to deal in live-stock, he to furnish
    $50 and the use of his horse and buggy, and Leach the balance of
    the capital.   Each was to devote his time to the business, and to share
    equally in the profits and losses.   No firm name was agreed upon or
    used, nor time fixed for the termination of the agreement.   After
    commencing business it was agreed that defendant should pay his
    $50 by furnishing a cow, at $30, for the first car-load of stock, which
    was done, and $20 worth of sheep for the second shipment, or pay
    the $20 in money.   The parties bought and shipped one car-load of
    stock, and bought a car-load of sheep, part before and part after the
    first shipment, *all* under the *original* agreement.   Both parties were
    insolvent, and Leach obtained money for the purchase of the *first* car-
    load of *stock* by draft on the consignees, with bill of lading attached,
    and for further purchases by discounting a note signed by him and
    plaintiff.   The sheep were attached by an *individual* creditor of Leach,
    and to secure their release, and a debt due another of *his* creditors,
    Leach executed a bill of sale of the sheep in the absence and with-
    out the knowledge of defendant; the day after the sale Leach and
    his vendee sold 93 of the sheep for $263.43, which was paid to the
    vendee.   Defendant was present and helped weigh the sheep, and
    the testimony is conflicting as to his presence when the money for
    the same was paid; he denies all knowledge as to its use, and testifies
    that Leach informed him that he paid a private debt with it.   The
    remaining sheep were put out to pasture, and sold by defendant, and
    plaintiff brought suit for their conversion, the bill of sale having been
    assigned to him prior to such sale.

    *Held,* that the circuit judge correctly instructed the jury that, under
    the undisputed facts in the case, defendant and Leach were partners,

and that the sheep sued for belonged to the partnership; but that if the jury found from the evidence a ratification by defendant of the action of Leach in giving the bill of sale, they should render a verdict for the plaintiff.

2. Where, in a case involving the question of partnership *in fact*, there is no dispute as to the *terms* of the agreement between the parties, it is to be construed by the court.

3. The rule that an agreement by which *one* party furnishes the *entire* capital, and the other is to share in the profits and losses of the enterprise as compensation for his services, does *not* create a partnership, has no application to a case where the agreement is not limited as to time nor confined to a single venture, and *both* parties contribute to the capital to be invested.

4. A bill of sale given by *one* partner to secure his *private* debts cannot affect the right or title of his copartner in the partnership property, unless authorized or sanctioned by him; and the question of such ratification is for the jury. The most that the purchaser takes is the undivided interest of *his* vendor, subject to all the rights of the other partner, and to an accounting between the copartners. He has no right to change the possession or make any specific division of the effects, but takes subject to the satisfaction of the partnership debts and the claims of the other copartner. Trover will not lie at the suit of such vendee, where there are outstanding partnership debts.

Error to Cass. (Smith, J.)  Argued April 13 and 14, 1886.  Decided April 29, 1886.

Trover. Plaintiff brings error.  Affirmed.  The facts are stated in the opinion, and in head-note 1.

*Howell & Carr*, for appellant:

If a partnership ever existed, it was for a single adventure, and terminated with the first load: Collyer on Partnership, § 107 ; and defendant's failure to contribute his share operated as a dissolution unless some new arrangement was made : Id. § 115 ; Story, Id. § 280.

In the second adventure defendant furnished the *use* of his horse and buggy, retaining the *title* in himself, while Leach furnished the subject-matter. This would not constitute a partnership: *Bradley v. White*, 10 Metc. 303.

A partnership in profits and losses may exist where one partner holds the entire capital stock: 3 Kent's Com. 21–2, and notes; *Champion v. Bostwick*, 18 Wend. 183 ; and whether the title to the partnership property is in one or both

partners is a question of fact for the jury : Collyer on Part.
§§ 167–9 ; *Gould v. Gould,* 6 Wend. 263 ; *Williams v. Hen-
shaw,* 11 Pick. 79 ; Wells on Law and Fact, §§ 93–4.

"If a person agree to be interested in the profits of an
adventure, this agreement *alone* will not constitute him a
partner in the goods which are the subject-matter of the
adventure" : Collyer on Part. §§ 170–2 ; *Smith v. Watson,*
2 Barn. & C. 401 ; *Blanchard v. Coolidge,* 22 Pick. 155 ; Story
on Part. § 27 ; *Heran v. Hall,* 1 B. Mon. 159 ; *Bartlett v.
Jones,* 49 Am. Dec. 606 ; *Whitcomb v. Converse,* 119 Mass.
43 ; nor would the partner having no interest in the goods
have any lien upon them : Collyer on Part. § 125 (n. 1) ;
*Kay v. Johnston,* 21 Beavan, 536 ; *Lindsay v. Gibbs,* 22 Id.
522

Until defendant contributed his share of the capital it
belonged to the partner contributing it, and defendant's interest had not yet commenced : Collyer on Part. §§ 271, 513–4 ;
*Lycoming Ins. Co. v. Barringer,* 73 Ill. 230 ; *Wilson v.
Campbell,* 5 Gilman, 383 ; and, under our version of the facts,
the property would not belong to the firm : *Stumph v.
Bauer,* 76 Ind. 157 ; *Conroy v. Campbell,* 45 N. Y. Sup. Ct.
326.

If there was a partnership, defendant was a dormant partner, and plaintiff loaned the money in reliance upon the stock
it bought. The credit was not given to Leach, but to the
property, and the bill of sale was taken in good faith from
the ostensible owner, who was doing business in his own
name, hence was valid : Collyer on Part. § 719 (n. p. 763) ;
*Blin v. Pierce,* 20 Vt. 25 ; *Hagar v. Stone,* Id. 106 ; *Curtis v. Belknap,* 21 Id. 433 ; *Lord v. Baldwin,* 6 Pick. 348 ;
*Tallcott v. Dudley,* 4 Scam. 428–438 ; *Clark v. Miller,* 4
Wend. 628 ; *Locke v. Lewis,* 124 Mass. 1 ; *Durant v. Rogers,*
87 Ill. 509 ; *Ontario Bank v. Hennessey,* 48 N. Y. 545 ;
*Richardson v. French,* 4 Metc. 577 ; *Sweetzer v. Mead,* 5
Mich. 107–111 ; *Parshall v. Fisher,* 43 Id. 530–4 ; *Stecker
v. Smith,* 46 Id. 14, 15.

The defendant can only repudiate the bill of sale as a partner, for the benefit of the partnership, and not as an individual separately interested. He has no more right in this
regard than his copartner who gave the bill of sale, and its
repudiation is taking advantage of his own fraud, for by
whomsoever repudiated the benefit inures to the firm, unless
it be held that it passed Leach's interest and made plaintiff
and defendant tenants in common : *Homer v. Wood,* 11 Cush.
62 ; *Tallcott v. Dudley,* 4 Scam. 438.

The bill of sale was not void, because it would in any event convey the interest of Leach, and thus dissolve the partnership, and leave plaintiff and defendant tenants in common: *Edens v. Williams*, 36 Ill. 252; *Pierce v. Wilson*, 2 Iowa, 20; *Western Stage Co. v. Walker*, Id. 505; Collyer on Part. § 824; Story, Id. § 311; *Whitton v. Smith*, 1 Freem. (Miss.) 231; 1 Lindley on Part. § 718; *Marquand v. N. Y. Co.*, 17 Johns. 525; *Mumford v. McKay*, 8 Wend. 442; Jones on Chattel Mortgages, § 45.

*Harsen D. Smith*, for defendant:

The court correctly instructed the jury that Leach and defendant were copartners: *Wisner v. Davenport*, 5 Mich. 504; *Kelly v. Hendrie*, 26 Id. 256; *Pleasants v. Fant*, 22 Wall. 122; *Commissioners v. Clark*, 94 U. S. 284; their agreement contains every element necessary to constitute such copartnership: 1 Lindley on Part. §§ 18, 91; *Scott v. Colmesnil*, 7 J. J. Marshall, 416; *Cumpston v. McNair*, 1 Wend. 457; *Bulfinch v. Winchenbach*, 3 Allen, 161; *Miller v. Hughes*, 10 Am. Dec. 719; *Brown v. Higginbotham*, 27 Id. 618; *Kinsler v. McCants*, 53 Id. 711; *Howze v. Patterson*, 53 Ala. 205; *Wisner v. Davenport*, 5 Mich. 504.

The bill of sale was given as a mere security, and was in law a chattel mortgage (*Cooper v. Brock*, 41 Mich. 490–1), and was given by Leach to secure his individual debts; a chattel mortgage thus given is invalid unless its execution is assented to by the other partner: *Clark v. Houghton*, 12 Gray, 38; *Scott v. Dansby*, 12 Ala. 714.

One partner cannot mortgage or pledge the partnership property to secure his individual debt, without the consent of his copartner: *Rogers v. Batchelor*, 12 Pet. 221; *Smith v. Andrews*, 49 Ill. 28; *Caldwell v. Scott*, 54 N. H. 414; *Viles v. Bangs*, 36 Wis. 135; *Hotchin v. Kent*, 8 Mich. 526–7; Collyer on Part. § 283; Story, Id. § 132; Parsons, Id. § 210; 3 Kent's Com. 44.

The rule is the same although the mortgagee is ignorant of the partnership and supposes that the property belongs to the mortgagor: *Geery v. Cockroft*, 33 N. Y. Sup. Ct. 147; *Ackley v. Staehlin*, 56 Mo. 558; *Buck v. Mosley*, 24 Miss. 170; *Daniels v. Daniels*, 9 B. Mon. 195; *Tanner v. Hall*, 1 Penn. St. 417; *Ridley v. Taylor*, 13 East, 175; Story on Part. § 212 (n.); 3 Kent's Com. 43. A different rule would apply if defendant had induced plaintiff to believe that Leach was the sole owner of the sheep, or that they were not copartners: *Gordon v. Ellis*, 52 Eng. C. L. 821.

The law seems to be settled that where one partner borrows money upon his individual credit, and gives his individual note therefore, such indebtedness does not become a partnership charge, even though the money is used in the partnership business: *Willis v. Hill*, 31 Am. Dec. 412; *Peterson v. Roach*, 32 Ohio St. 374; *Bank of Salem v. Thomas*, 47 N.Y. 15 ; *Jaques v .Marquand*, 6 Cow. 497 ; *LeRoy v. Johnson*, 2 Peters, 186 ; *Bank of Memphis v. Day*, 12 Heisk. 413 : *Loyd v. Freshfield*, 2 C. and P. 325 ; *Emly v. Lye*, 15 East, 10 ; 3 Kent's Com. 41; 1 Parsons, Bills and Notes, § 130; and if the $200 indebtedness to the bank was not a partnership debt, then the plaintiff could obtain no valid lien upon the partnership property by any act of Leach, unless assented to or ratified by the defendant : *Peterson v. Roach*, 32 Ohio St. 374.

CHAMPLIN, J.    Trover to recover the value of 22 sheep,..

In June, 1883, Eugene Leach and defendant, Tharp, entered into an agreement for dealing in live-stock.    Tharp was to put in $50 and to furnish his horse and buggy, and Leach was to furnish the balance of the capital.    Each was to devote his time to the business, and they were to share equally in the profits and losses of the enterprise.

After they had commenced business a day or two, Tharp told Leach that he had stock on his own place that he could put in for the $50, and that would save him getting the money from some other place.    It was then agreed that he should put in a cow and some sheep, and when the time came for shipping the stock to market in Chicago he put in a cow at the agreed price of $30, and the sheep he was to put in the next load, or make up the amount in money.    Leach and Tharp bought together and shipped one car-load, half sheep and half cattle, and bought one car-load of sheep which were not shipped.    A portion of the sheep last mentioned were purchased before the first car-load was shipped, and the balance afterwards.    No new arrangement was made with reference to the last car-load.

No firm name was agreed upon or used, and no time fixed when their arrangement should terminate.    Both Leach and Tharp were insolvent.

To furnish capital to purchase stock before the first car-

load was shipped, Leach obtained money from the bank by draft on H. E. Mallory Bros., accompanied by bill of lading. To obtain money to purchase more sheep, Leach borrowed of the bank upon a note signed by Leach and plaintiff for $200, and Leach and Tharp went out into the country and bought a sufficient number of sheep to make another car-load. Leach, who was one of plaintiff's witnesses, testified :

" Tharp and I were partners in the profits and losses. He was to stand half the losses,—that was the agreement ; and he and I were to buy the sheep together. We were to go around the country together and pick up the sheep. The capital I put in I borrowed of the bank. The $200 got on George Kingsbury's and my note I put in my pocket and took with me, and used it in paying for the sheep as far as it went, and next day I went into the bank and drew a check on Mallory Bros."

While the sheep were in the Michigan Central Railroad Company's stock-yards at Cassopolis, William Graham attached Leach's interest in the sheep for a debt owing by Leach to Graham.

Leach also owed an individual debt to Charles Henry Kingsbury, of $52.36, and in order to obtain a release of the attachment, and secure the two Kingsburys, it was arranged between Leach, Charles H. Kingsbury, and George M. Kingsbury that Charles Henry Kingsbury should take a bill of sale to secure himself, and George M. for the note he had signed, and also to secure himself for joining in a note with Leach to Graham for the amount of the attachment debt for $48.25, making the total amount of the indebtedness secured by the bill of sale $300.61.

Tharp was not present when the bill of sale was given to Charles Henry Kingsbury. Nothing was said to him about it before it was given.

On the day the sheep were attached Leach told Graham that he and Tharp were partners in those sheep ; and he also told William Sears, from whom some of these sheep were bought, that they were partnership sheep. Leach gave Sears a check on the First National Bank of Cassopolis for the sheep bought of him, signed " E. LEACH," which was dishon-

ored, and not paid. David Rench testified that Leach told him that he and Tharp were in partnership, buying sheep together. The bill of sale was as follows:

"CASSOPOLIS, MICH., July 6, 1885.

"For value received I hereby grant, bargain, and sell to Charles H. Kingsbury the following goods and chattels, viz.: one hundred and twelve sheep and lambs, now in the Michigan Central stock-yards, in Cassopolis, and three head of sheep now on the farm of Frank Tietsort, in LaGrange township; and I hereby put the said Chas. H. Kingsbury in full possession of said goods and chattels by the delivery of this bill of sale.

"E. LEACH." [Seal.]

The next day after the date of this bill of sale Leach and Kingsbury sold to Charles Zeller 93 of the sheep in the stock-yards for $263.43, which money he paid to Kingsbury a day or two afterwards. Tharp and Leach were present, and helped weigh out the sheep sold to Zeller, and, according to some of the witnesses, Tharp was present in the bank when the money was paid over to Kingsbury. Tharp denies this, and all knowledge of what was done with the money. He says Leach told him afterwards that he used the money to pay an indebtedness of his to the bank.

After the sale to Zeller, the remaining sheep were, either by Kingsbury's or by Leach's direction, driven to the farm of Tietsort, and put in pasture with the other sheep, where they remained until sold by Tharp to a man from South Bend; but whether before or after the assignment of the bill of sale by Charles H. to George M. Kingsbury, which bears date July 31, 1885, does not appear from this record. The sale by Tharp is the conversion complained of, and for which suit is brought.

The main question in the case is whether Leach and Tharp were partners in the sheep in question, and, if so, whether Tharp ratified the giving of the bill of sale to Kingsbury.

The learned circuit judge charged the jury, as matter of law, that Leach and Tharp were partners, and that the sheep in question belonged to the partnership. He left it for the jury to find from the evidence whether or not Tharp rati-

-fied the giving of the bill of sale to Kingsbury, and, if he did, the jury were instructed to render a verdict for the plaintiff; if they found no ratification, they should return a verdict for the defendant. The jury found for the defendant.

Complaint is made respecting this instruction that the judge should have submitted the testimony to the jury, and instructed them to find, as matter of fact, whether there was a partnership in the sheep, and also whether there was not previous consent to the giving of the bill of sale.

Counsel for plaintiff also contend, as matter of law, that the partnership, if so it may be called, only extended and embraced the profits and loss resulting from the venture, and did not extend to or embrace the sheep or stock purchased, out of which the profits or loss might arise.

There is no dispute or contradiction in the testimony as to what the agreement entered into between the parties was. It was therefore to be construed by the court, and the judge was right in not submitting the question of partnership or no partnership as to the sheep to the jury.

Cases are cited on behalf of plaintiff which sustain the position that if a person agree with another to be interested in the profits of an adventure, this agreement alone will not constitute him a partner in the goods which are the subject-matter of the adventure. Colly. Partn. §§ 170–172; *Smith v. Watson*, 2 Barn. & C. 401; Story, Partn. § 27; *Heran v. Hall*, 1 B. Mon. 159; *Bartlett v. Jones*, 2 Strob. 471; *Whitcomb v. Converse*, 119 Mass. 43. Those were cases which appertained to a single adventure, and where one party furnished the whole capital, and the other party was, by the agreement, to share in the profits and losses of the enterprise as his compensation for services rendered.[1]

Here the case is different. The agreement was not limited to a single venture or car-load, but the continuance of the business was indefinite, and both parties contributed to the capital to be invested. This fact plainly distinguishes this

---

[1] See *Beecher v. Bush*, 45 Mich. 188; *Colwell v. Britton*, 59 Id. 351.

case from those cited above, and relied upon by counsel for the plaintiff.

If two persons agreeing to engage in the prosecution of a lawful business, each to furnish a portion of the capital stock and to share in the profits and losses of such business, does not make them partners in that business, then I fail to comprehend what sort of an agreement is required to constitute a partnership.

But it is further contended by counsel for plaintiff that defendant failed to contribute his proportion of the capital stock, and that the capital stock belonged to the partner contributing it, and the law will consider that Tharp's interest had not yet commenced; that Tharp's failure to contribute his share would operate as a dissolution unless some new arrangement was made.

It appears from the record before us that it was mutually agreed between Leach and Tharp that instead of his putting in his share of $50 in cash he might put in stock to that amount, and that he put in a cow in the first car-load shipped, which was agreed upon as being of the value of $30, and that he should put in sheep enough to make up the balance, or put in the money, for the next car-load to be shipped; from which it is seen that he had a community of interest with Leach in both car-loads. There were 20 sheep which they had purchased before the first shipment which remained and were on hand at the time the bill of sale was given.

Counsel for plaintiff claim that the three sheep mentioned in the bill of sale as being at Tietsort's were not partnership property, but were the individual property of Leach. I find no testimony in the record to sustain this position. On the contrary, the testimony is clear that the sheep covered by the bill of sale were bought before they got returns of the car-load shipped to Chicago.

The bill of sale given by Leach to Kingsbury to secure his private individual debts could not affect the right or title of Tharp in the partnership property, unless authorized or sanctioned by him. Previous authority was not shown, and the court properly left the question of ratification to the jury

under the testimony, and the jury have found against such ratification.

There is no foundation in the record for the claim put forward that Tharp was a dormant partner. It is also claimed that the bill of sale was not void in any event; that it would convey all the title that Leach had in the property, and so dissolve the partnership, and leave the plaintiff and defendant tenants in common. But, however that may be, it is certain that the interest of the other partner is not affected by the sale. The purchaser takes only the undivided share of the party selling, subject to all the rights of the other partner, and to the account to be taken between them. He has no right to change the possession, or make any specific division of the effects. The undivided share he takes is the share his vendor had, and he is entitled only to share the balance which is ascertained to be due him after partnership debts are paid and the claims of the other partner are satisfied. The action of trover will not lie in such case, where there are outstanding partnership debts.

It was proved in this case that the sheep purchased from William Sears by Leach and Tharp, and which were included in the bill of sale, have not been paid for. Leach gave his individual check for these, but on presentation to the bank it was not paid, and the firm are still owing the debt. If the debt secured by the bill of sale had been a partnership debt, or if it had been given to secure the repayment of capital used in the partnership business and borrowed for that express purpose, the case might present a different aspect. But instead of this, it included the individual indebtedness of Mr. Leach to Graham and another debt to Charles H. Kingsbury, and was therefore unauthorized by any principle of law relating to partnership dealings.[1]

The case was submitted to the jury under proper instructions from the court, and the judgment is affirmed.

CAMPBELL, C. J., and MORSE, J., concurred. SHERWOOD, J., concurred in the result.

[1] As to effect of mortgage executed by one copartner to secure individual and firm creditors, see *Walker v. White,* 60 Mich. 427.