CHARLES W. EDWARDS ET AL., APPELLEES, V. EDWARD A. HATFIELD ET AL., APPELLANTS.

· FILED MAY 17, 1913. No. 17,026.

1. **Partnership:** TRANSFER OF STOCK TO TRUSTEES: ACTION FOR CONVERSION. Where partners engaged in mercantile business transfer their stock to a committee of their creditors under a contract authorizing the committee to conduct the business, and requiring a return of the remainder of the property whenever all claims are paid in full, the members of the committee are trustees for both creditors and partners, and the latter alone, before the claims have been paid in full, cannot maintain an action at law against the members of the committee for the conversion of stock sold by them in bulk in violation of their duties as trustees.

2. ——: ——: ——. In an action by partners for the conversion of partnership property, there can be no recovery by individual partners to the exclusion of others.

APPEAL from the district court for Scott's Bluff county: HANSON M. GRIMES, JUDGE. *Reversed.*

*John L. Webster, Francis A. Brogan* and *William Mitchell,* for appellants.

*Wilcox, Halligan & Mothersead* and *F. A. Wright,* contra.

ROSE, J.

This is an action to recover $27,700 for the conversion of partnership property consisting of merchandise, book accounts, bills receivable and the good-will of a mercantile business. From the judgment on a verdict in favor of plaintiffs for $6,000, defendants have appealed.

For the purposes of review, the consideration of one question only is necessary. Are plaintiffs entitled to relief in an action at law for conversion? Plaintiffs, Charles W. Edwards, Edgar North and Jess B. Edwards, were conducting a hardware and implement business at Minatare, January 29, 1908, as partners under the firm name

of North & Company. They were then unable to meet their obligations, and so notified their creditors, giving their liabilities as $11,733.83 and their assets as $17,549.44, and asking time for adjustment. A creditors' committee, composed of Edward A. Hatfield, C. A. Newberry and C. O. Aspinwall, met plaintiffs at Minatare, February 12, 1908. As a result, the partnership property and the real estate of individual members of the firm were transferred to the creditors' committee by a bill of sale, containing, among other provisions, the following:

"North & Company are entirely solvent, but on account of their inability to collect their accounts due them and realize upon their assets, by reason of the slow sale thereof, they are unable, at the present time, to promptly liquidate their indebtedness, and have requested their said creditors to postpone the maturity of their indebtedness until the 1st day of November, 1908.

"This assignment is made for the purpose of enabling the said creditors' committee, upon obtaining the consent of the creditors to such postponement of the maturity of their claims, to cause the said assets to be sold, and the business to be conducted and the proceeds to be applied, from time to time, to the payment of the said indebtedness *pro rata* in proportion to the amounts thereof.

"Immediately after the execution and delivery of this assignment, the said North & Company and the said creditors' committee shall together take an inventory of all the assets hereby transferred, and make an estimate of the present value thereof, and thereupon the said committee shall authorize the said Jess B. Edwards and Edgar North as their agents to proceed to sell the said merchandise at retail, and to collect the said notes and accounts, and remit the proceeds of all sales and collections to the chairman of the said committee.

"The said committee shall be authorized to make such purchases only as may be absolutely necessary to keep the said stock in a condition to carry on the business, and shall also be authorized to meet the necessary expenses

thereof. All other funds realized by them from sales ·and collections shall be distributed ratably among all the creditors in proportion to the amounts of their claims.

"Whenever the claims of all the creditors of the said firm of North & Company have been fully paid and satisfied, and all expenses incurred in this liquidation shall have been fully paid, any balance of property or money remaining in the hands of the committee shall be returned to the said North & Company, their successors and assigns."

To this arrangement all of the creditors agreed. The creditors' committee, with plaintiffs Edgar North and Jess B. Edwards in charge, conducted the business until March 3, 1908, when the following paper was executed:

"Know all men by these presents: That we, the undersigned, North & Company, do hereby authorize E. A. Hatfield, C. O. Aspinwall and C. A. Newberry, of the creditors' committee holding the stock of goods of North & Company under the bill of sale of February 12, 1908, to sell the said stock of goods described in the said bill of sale, in bulk, at private sale, upon such terms as the said committee may deem advisable, and apply the proceeds of such sale in the manner provided in the said bill of sale. Dated at Minatare, Nebraska, this 3d day of March, 1908. North & Company, by Edgar North. Witness: C. O. Aspinwall, R. G. Mitchell."

Newberry, a member of the creditors' committee, offered for the stock 80 per cent. of its value as inventoried, intending, as he says, to conduct the business in the name of the Minatare Hardware Company. This offer the creditors' committee accepted, and the following bill of sale was executed:

"Know all men by these presents: That we, the undersigned, North & Company, a copartnership, in consideration of the sum of one dollar to us in hand paid by North & Company, have bargained and sold, and do hereby bargain, sell, assign, transfer and set over to the said Minatare Hardware Company all that stock of merchandise,

hardware, farming implements, buggies, wagons and all the stock of goods now kept and maintained in and at the store building of North & Company, in the town of Minatare, Scott's Bluff county, Nebraska, as more fully described in an inventory which is hereto attached and identified by the signature of the parties, and made part hereof.   In witness whereof the said North & Company has caused this bill of sale to be executed in its partnership name this 24th day of March, 1908.   North & Company, by Edgar North.   We join in the above bill of sale. Creditors' Committee:   E. A. Hatfield, C. O. Aspinwall, C. A. Newberry.   Witness:   Clyde Spanogle."

A month later Newberry, the purchaser, a member of the creditors' committee and a trustee, sold the business to H. A. Lotspeich at a large profit, receiving $4,000 in cash and six notes for $1,000 each.   It is for the conversion of property, valued at $17,700, and for the loss of goodwill, alleged to be worth $10,000, that judgment was demanded, the members of the creditors' committee and Lotspeich being named as defendants.

Plaintiffs alleged, and offered proof tending to show, that the bill of sale to the creditors' committee was executed with the understanding that the business should be restored to the partnership November 1, 1908.   The bill of sale, however, is pleaded in the petition.   It does not so provide, and there is no attempt to reform or to rescind it.   By its terms "any balance of property or money remaining in the hands of the committee" shall be returned to plaintiffs, whenever the claims of all creditors "have been fully paid and satisfied."   Only 70 per cent. of the claims of creditors has been paid, and the time for turning back the business is not fixed by written contract. The bill of sale shows on its face that the members of the creditors' committee are not only plaintiffs' trustees, but that they are trustees for creditors other than themselves. For the faithful execution of their trust, they are accountable to such other creditors as well as to plaintiffs. This action at law was commenced before they had ac-

counted in equity to either class of beneficiaries. Have the trustees made an unlawful profit by abuse of trust? Have they converted trust property to their own use? From which of the two classes of beneficiaries did the trustees illegally take trust property? In equity, did plaintiffs own the property, including the good-will of the firm, while the trust was being administered and while the assets were being managed by trustees under a common agreement made for the benefit of both debtors and creditors? The members of the committee were themselves creditors, it is true, but they were also trustees for other creditors who are not parties to this suit—an action at law wherein the petition shows abuse of the fiduciary relation between the trustees and beneficiaries in both classes. If the judgment in favor of plaintiffs for the full value of the converted property, including good-will, can be sustained, what is the measure of accountability of the trustees for abusing the confidence of the absent creditors? Are the latter deprived of their remedy in equity? Could the absent creditors adopt the remedy selected by plaintiffs and recover a second judgment for the conversion of the same property? Their claims are not paid in full. They were parties to the contract creating the trust for the benefit of both debtors and creditors, and if they seek further redress they must go to the forum where trustees are required to account according to the principles of equity. Plaintiffs should have taken that course.

For another reason, plaintiffs should seek relief in equity. While they assert that the transfer of the stock in bulk was unauthorized and void, North, one of the partners, authorized the transfer in writing and executed the bill of sale to the Minatare Hardware Company, using in both instances the firm name of "North & Company, by Edgar North." He advised the subsequent purchaser, Lotspeich, that it would be safe to purchase the stock, and he worked in the store for each transferee after there had been a change in ownership. If the transfers in bulk under the circumstances narrated were unauthorized and

void as to the other partners, a question not decided, North was nevertheless bound by his individual acts, unless the same were induced by fraud or undue means, which is not shown. *Reed v. Gould,* 105 Mich. 368; *Church v. First Nat. Bank of Chicago,* 87 Ill. 68; *Kingsbury v. Tharp,* 61 Mich. 216; *Blaker v. Sands,* 29 Kan. 551. North joined his partners as a plaintiff, though he is bound by the transfers. He is therefore in the attitude of demanding damages for a conversion in which he was an active participant. This is an anomaly not sanctioned by the law. He is not entitled to damages for conversion. Since North cannot recover, his partners have mistaken their remedy, and, under their present petition, are defeated by the familiar doctrine that, in an action by partners for the conversion of partnership property, there can be no recovery by individual partners to the exclusion of others. To state the rule in a different form: "Conversion will not lie on behalf of an individual partner to recover partnership property from one holding title through another partner." *Andrews v. Clark,* 5 Neb. (Unof.) 361; *Estabrook v. Messersmith,* 18 Wis. *545; *Reed v. Gould,* 105 Mich. 368; *Farley v. Lovell,* 103 Mass. 387; *Sindelare v. Walker,* 137 Ill. 43; *Homer v. Wood,* 11 Cush. (Mass.) 62; *Church v. First Nat. Bank of Chicago,* 87 Ill. 68.

The facts narrated are presented by the pleadings and evidence, and they show conclusively that plaintiffs have mistaken their remedy, and that they are not entitled to relief in an action at law for conversion. The judgment of the district court is reversed and the cause remanded for further proceedings, with permission to plaintiffs, or any of them, if so advised, to amend their pleadings and to bring in any other parties deemed to be necessary to an adjudication of the matters in controversy.

REVERSED.

FAWCETT, J., not sitting.