THADDEUS DENSMORE, DE WITT GROW AND ELISHA P. GROW
v. SALMON S. MATHEWS.

*Interference by levy with possession of mortgagees—Partnership—Attachment*
*—Evidence of value.*

1. A first mortgagee can waive his priority and let the second in upon the same footing with himself, so that in taking possession on default they become tenants-in-common of the securities and the goods therein specified. And they can jointly bring trespass for interference with the goods.

2. The existence of a partnership, as between the parties, is a question of fact for a jury. And it is negatived by a verdict permitting recovery if there could be no recovery otherwise.

3. Attachment proceedings cannot properly rest on the ground merely that the debtor's mortgagees in possession are, with his assent, selling his stock at private sale instead of at auction, as provided in the mortgage, and are closing out the remnant by barter.

4. Creditors who levy subject to a mortgage are in position to require the mortgagee to pursue the methods prescribed in the mortgage as to the mode of sale and the disposition of the proceeds.

5. In an action by mortgagees against a marshal for interference with their possession while disposing of the goods, it is proper to show that they were realizing the best prices that could be obtained and failed to get enough to pay the mortgages, and that the deficiency exceeded the value of the goods taken by the marshal.

6. The damages to mortgagees in possession from a wrongful levy is the market value of the goods at the time of the levy; and the appraisal made at that time is some evidence of their value.

Error to Ingham. (Gridley, J.) Nov. 5.—Jan. 6.

TRESPASS. Defendant brings error. Affirmed.

*Julian G. Dickinson* and *Isaac P. Christiancy* for appellant. There can be no joint right of action for trespass in the seizure of goods where there is no joint right to them : *Warne v. Rose* 5 N. J. L. 809 ; *Barry v. Rogers* 2 Bibb. 314 ; *Sweetzer v. Mead* 5 Mich. 107 ; *Giovanni v. First National Bank* 51 Ala. 177 ; *St. L. R. R. Co. v. Linder* 39 Ill. 433 : 1 Suth. on Damages 210, 241 ; the authorities that sustain joint action in trespass are cases against naked trespassers, having no justification, as in *Duncan v. Spear* 11 Wend. 54 ; *Sickles v. Gould* 51 How. Pr. 24 ; *Paddock v. Wing* 16 How. 547 ; proof tending to show partnership would be sufficient to enable the jury to find there was such partnership : *Lyell v. Sanbourn* 2 Mich. 109, citing Story on Partnership 22–30 and 3 Kent's Com. 28 ; *Merritt v. Dickey* 38 Mich. 41 ; *Way v. Stebbins* 46 Mich. 296 ; *Parshall v. Fisher* 43 Mich. 529 ; *Stecker v. Smith* 47 Mich. 14 ; *Hutchinson v. Dubois* 45 Mich. 143 ; *Hatzenbuhler v. Lewis* 51 Mich. 585 ; *Beecher v. Bush* 45 Mich. 188 ; *Hinman v. Littell* 23 Mich. 484 ; *Sager v. Tupper* 38 Mich. 258 ; *Rice v. Shuman* 43 Penn. 37 : Pars. Part. 63.

*Huntington & Henderson* for appellees.

CHAMPLIN, J. In the fall of 1877 one Frank Gates engaged in business at Dansville, Michigan, retailing ready-made clothing and dry goods. He made purchases from time to time of different dealers, and among others, from Grow Brothers of Bay City, consisting of De Witt Grow and Elisha P. Grow, two of the plaintiffs in this suit.

Thaddeus Densmore of Mason, Michigan, is an uncle of Gates, and he had given to Gates a letter of credit to different firms in Detroit, upon the strength of which Gates had purchased goods upon credit.

Some time about September, 1878, Gates entered into negotiations with one Horace Marler, who was then residing at Bay City, for a copartnership. He solicited Marler to take an interest in his business as a partner, and invest his money therein. Marler expected to receive money from his parents in England. He went with Gates to Dansville, looked over the location, and concluded to go into partnership with Gates, and put in his money against the stock on hand belonging to Gates. No inventory was taken at this time, and the exact amount in value of the stock on hand belonging to Gates was not ascertained. The terms of the partnership were arranged, and Marler was to return to Dansville and enter into the partnership business as soon as he received his money. It was likewise arranged that Gates should purchase some goods for the new firm, which was to be called Gates & Marler.

Pending the arrival of the money, Mr. Eastabrook, who was a salesman for the firm of Simons, Hatch & Whitten, of Boston, Massachusetts, was in Bay City, Michigan. He testifies that about the first of October, 1878, he met both Marler and Gates in Bay City, and Mr. Gates informed him that they had formed a partnership under the name of Gates & Marler, and intended carrying on business at Dansville, and that Marler was going to put some money into the business, so as to make the concern more reliable; that he then gave an order for Gates & Marler, which he sent on to Simons, Hatch & Whitten, in Boston, with directions as given him by Gates to ship the goods to Gates & Marler, at Dansville, Michigan; that Marler was present a portion of the time in the room while the matters of partnership and the order for the goods were being talked about, and joined in the conversation, so that the various transactions were talked over by the three of them while he was present. Mr. Gates testifies that he never had any conversation with Eastabrook in the pres-

ence of Marler; that he told him in regard to the matter that had been talked of in regard to Marler, and he said he would ship the goods to Gates & Marler, Dansville, and that he (Gates) said: "Yes; and I will want them any way, whether this arrangement is perfected or not,"—and he said, "All right,"—and the goods came. The goods were shipped to Gates & Marler, and were received by Gates, and placed in the store at Dansville. Gates rented another store than that which he was occupying, and he exhibited in the window of this store a placard, stating that the firm of Gates & Marler would occupy the store after a certain date. He also had printed and distributed hand-bills. announcing the new firm of Gates & Marler. He purchased goods from different firms in Detroit in the firm name of Gates & Marler, and had the goods shipped to Gates & Marler, at Dansville. He removed his goods to the store he had rented for the occupancy of the firm of Gates & Marler, and received the goods ordered in the firm name, and placed them in stock in such store; but Marler never, in fact, put in the agreed capital, and never came to Dansville, and took no part in the partnership affairs after the purchase of the goods from Simons, Hatch & Whitten.

Gates continued the business after the above purchases in his own name, but never notified the parties from whom he purchased that the partnership with Marler had fallen through. One firm in Detroit, learning of the fact, sued out a writ of replevin, but before it was served the claim was settled by Mr. Densmore; who also settled with or assumed the claim of the other Detroit creditors, until the claims thus guaranteed or assumed amounted to about $3000. To secure Densmore for the claims thus assumed by him, Gates, on the 21st day of October, 1878, executed a chattel mortgage upon his entire stock of goods and books of account then in his store at Dansville, together with all goods, wares and merchandise that might at any time thereafter be placed in said store, or added to said stock for the purpose of merchandising. The mortgage was conditioned to pay $1000, on or before sixty days from the date of the instrument; $1000, on or before four months,

and the balance of $1000, on or before six months, with interest at the rate of ten per cent. per annum. If default was made in the payment, or if the mortgagor should sell, assign or dispose of, or attempt so to do, the whole or any part of the goods, or remove or attempt to remove the whole or any part thereof from the village of Dansville, without the written assent of the mortgagee, the latter was authorized to take possession of the goods, and sell them at public vendue, after giving six days' notice, and retain the money due, and pay over the surplus to the mortgagor. The mortgage was filed in the township clerk's office the same day at seven o'clock and forty minutes A. M.

Later in the day Gates executed another chattel mortgage to Palmer Grow and De Witt Grow, copartners, of Bay City, Michigan. This mortgage covered the same stock and property as the mortgage to Densmore and all additions made to said stock from time to time, and contained a warranty that the property was free and clear from all liens, conveyances and encumbrances and levies, except chattel mortgage to Thaddeus Densmore. This mortgage was conditioned for the payment of $2307.85, with interest at ten per cent., in three equal payments, due sixty days, four and six months, respectively. If default was made, it authorized the mortgagees to sell the goods at public auction after the like notice as is required by law for constable's sales. This mortgage was filed October 22, at three o'clock and forty-five minutes P. M. It is stated in this mortgage that Frank M. Gates, the party of the first part, being justly indebted to Palmer Grow and De Witt Grow, copartners, of Bay City, of the second part, in the sum of $2307.85, have, for the purpose of securing payment of said debt and the interest thereof, and being desirous of procuring goods, wares and merchandise of the said second party upon credit, and any indebtedness growing out of purchases hereafter made as aforesaid, granted, etc. This mortgage was given for goods which had been sold to Gates when he started in business at Dansville, and no sales were made to him after the date of the mortgage. On the 2d of January, 1879, Densmore and Grow Bros. took possession of the goods

under their chattel mortgages. The goods were turned over to them by Gates, and Densmore and Grow Bros. entered into an agreement that, in selling the goods, of the proceeds of the sale Densmore was to have three-fifths and Grow Bros. two-fifths thereof, until the mortgages were paid. They proceeded to sell the goods at retail and at private sale, and every Saturday they sold at auction to the highest bidder.

On the 2d day of January, 1879, Simons, Hatch & Whitten commenced suit by declaration against Gates & Marler in the circuit court of the United States for the Eastern District of Michigan; and on the 13th day of January, 1879 they sued out an attachment in said suit, which defendant, as United States marshal, levied upon a portion of the stock of goods in the possession of Densmore and Grow Bros. on the 16th day of January, 1879, for which the plaintiffs brought this action of trespass against the defendant on the same day.

Defendant pleaded the general issue, with notice that he would prove that he levied upon the goods in controversy at the time they were alleged to have been taken by him, January 16, 1879, under and by virtue of a writ of attachment issued out of the United States circuit court for the Eastern District of Michigan, in an action of assumpsit therein duly commenced by declaration, January 2, 1879, wherein Stephen B. Simons, Cornelius P. Hatch and Henry C. Whitten, citizens of the state of Massachusetts, are plaintiffs, and Frank Gates and Thomas Marler, citizens of the State and Eastern District of Michigan, are defendants; that said writ was delivered to defendant, as United States marshal for said district; and that said goods were subject to levy under said writ.

On the 13th of April, 1879, before said suit in trespass was brought on for trial, the said suit in the United States court proceeded to trial, and the said Simons, Hatch & Whitten recovered a final judgment in the sum of $677.16, including costs against the said Gates & Marler, copartners, as charged in the declaration. The goods in the mean time remained in the custody of the said United States marshal, under

and by virtue of his said levy; and on the 4th day of April, 1879 a writ of fieri facias duly issued upon said judgment from said United States court, under and by virtue of which the marshal levied upon said goods, and sold the same at judicial sale under said writ for the sum of $489.75. The said writ, on the return-day, was returned unsatisfied for the remainder of the money. The said suit in trespass, however, was prosecuted against the United States marshal, and came to trial October 21, 1879. By reason of certain rulings of the court below on said trial, whereby the said marshal was prevented from introducing in evidence his said writ of attachment, and showing that he had pursued its mandate, plaintiffs recovered judgment, and the judgment, on error to this Court, was affirmed. 43 Mich. 461. On writ of error to the Supreme Court of the United States the said judgment of affirmance was reversed, and the cause remanded to this Court for further proceedings in this cause in conformity to the opinion and judgment of the United States Supreme Court. 109 U. S. 216. The case was again tried in the circuit court on the 18th of March, 1885, and resulted in a verdict and judgment for the plaintiffs.

The principal questions raised by the record for our consideration are the following:

*First.* Can a joint action in trespass be maintained by plaintiffs under the facts disclosed in the record?

*Second.* Were the mortgages held by the plaintiffs void as against the attachment levied by the defendant?

*Third.* Was the evidence introduced upon the subject of damages proper and admissible?

The action was rightly brought in the names of the plaintiffs jointly. Under the arrangement made between the mortgagees and the mortgagor, the plaintiffs held joint possession of the goods. Densmore had the right to waive his priority which he had acquired by being the first mortgagee, and when he did so, and agreed with the mortgagees in the second mortgage that both mortgages should stand upon an equal footing, the two instruments became of the same legal effect

as if they had been executed at the same time; and the mortgagees in both instruments, after default and taking possession, became tenants-in-common of the securities and the property specified therein.  *Howard v. Chase* 104 Mass. 250; *Welch v. Sackett* 12 Wis. 243; *Phillips v. Cummings* 11 Cush. 469; *Gilmore v. Wilbur* 12 Pick. 120.  This agreement was neither fraudulent nor illegal.  A similar agreement was enforced in *Bradshaw v. McLoughlin* 39 Mich. 480.

The defendant claims that these mortgages were void as against the creditors of the firm of Gates & Marler.  He claims that there was a partnership existing between Gates and Marler as to parties dealing with them as such; and he claims further that the evidence shows that such partnership did in fact exist, and the stock of goods in the store of Gates went into the partnership as part of the stock, and the goods purchased in the firm name were also a part of such stock; that such being the fact, Gates could only mortgage his interest in the partnership to pay his individual debts; and this interest would not be the corpus of the partnership property, but only such interest as he might have after the winding up of the concern and payment of the partnership debts; and that, as creditors of the firm, the plaintiffs in the attachment could levy upon the goods in question as partnership property.  Whether a partnership had actually been entered into between Gates and Marler, the testimony was conflicting. Gates testified that an agreement to enter into partnership had been made, which was to take effect upon Marler's putting money capital into the concern, but that it never was perfected.  The testimony of Eastabrook showed that a partnership had been formed, and the acts of Gates in making purchases of goods in the firm name tended to show that it had been launched.  Upon the whole it was a question of fact for the jury, and was left to them under instructions of the court, and they have found that issue in favor of the plaintiffs.  It appears, therefore, from this record that, as between themselves, there was not a partnership entered into between Gates and Marler; and it follows that Gates had a

right to mortgage his goods to secure his creditors, the plaintiffs in this suit.

As to the particular goods sold and shipped by the plaintiffs in the attachment suit to the firm of Gates & Marler, the court instructed the jury the plaintiffs in the attachment suit might levy their attachment upon them, and left it to the jury to deduct the value of such goods, if they found a verdict in plaintiffs' favor, from the goods seized by defendant. The evidence showed that, of the whole goods seized by the marshal, there were nineteen dollars' worth of such goods that were shipped by Simons, Hatch & Whitten to Gates & Marler, at Dansville.

Complaint is made of the manner in which the plaintiffs were proceeding to sell the stock at private sale instead of public auction, as provided in the mortgage, and of the manner in which the balance of the stock was finally closed out by barter. But it was shown that such action on the part of the mortgagees was had with the consent or assent of the mortgagor; and, in any event, it afforded no just ground for seizure under the attachment. Had the parties whom the defendant represents seen fit to treat the mortgages as valid, they might have levied upon the entire stock subject to such mortgages; and then they would have been in a position to require the mortgagees to pursue strictly the authority contained in the mortgages as to the mode of sale and disposition of the proceeds. As it was, the testimony tended to show that they realized the best prices that could be obtained for the goods, and that they failed to realize sufficient to pay their mortgage debts, and that such deficiency exceeded the value of the goods taken by the defendant. This testimony was received against defendant's objection; but its admission was proper, for the reason that the plaintiff's mortgages were merely security, and it was proper to show the extent of the injury to them by reason of the wrongful act of the defendant.

The only evidence of the value of the goods seized by defendant was the appraisal made at the time the attachment was levied, and that of witnesses that the goods were worth

at least five per cent. more than they were appraised at. Defendant insists that this is no evidence of value or damage to plaintiffs, and that it was improperly received as evidence. The damages the plaintiffs suffered by the wrongful taking of the goods by defendant was the market value of the goods taken at the time of the trespass. The appraisal was some evidence of the market value, and was admissible. *Worthington v. Hanna* 23 Mich. 530; *Walrath v. Campbell* 28 Mich. 117; *Hunt v. Strew* 33 Mich. 89; *Dyer v. Rosenthal* 45 Mich. 588.

The charge of the court, covered fairly the issues presented in the case, and we think is unexceptionable; and in so far as the requests to charge the jury presented by counsel for defendant were not covered by the charge as given, they were properly refused.

Exceptions were taken to the admission and exclusion of testimony on the trial. We have carefully considered them, and find no prejudicial error in the rulings of the court thereon.

The judgment is affirmed.

The other Justices concurred.