EDWARD E. CARLSON, APPELLANT, V. CLARENCE L. PETERSON ET AL., APPELLEES.

FILED APRIL 17, 1936. No. 29651.

*William Ritchie, Hawthorne Arey* and *M. J. Flannigan,* for appellant.

*Johnsen, Gross & Crawford* and *John A. Rine, contra.*

Heard before Goss, C. J., Rose, Good, Day, Paine and Carter, JJ., and Chase, District Judge.

Day, J.

This is a suit in equity for an accounting. The trial court entered a judgment in favor of plaintiff for $1,500 and canceled two of plaintiff's notes held by defendant in the aggregate $1,322.50, $1,022.50 of which represented part of purchase price of membership in the Omaha Live Stock Exchange. The court also decreed that, upon payment of above sum and cancelation of notes, the partnership was terminated and plaintiff deprived of all further interest in the O. K. Commission Company and its assets. The plaintiff appeals from this decree.

The plaintiff alleges in his petition, as a first cause of action, an oral agreement of partnership between the plaintiff and the defendant for the conduct of a live stock commission business to start January 15, 1934; that the partnership continued in business until March 20, 1935; that plaintiff advanced, pursuant to the oral agreement, $3,000 capital for the use of said business and was to receive $200 a month as a salary and was to share the profits equally; that defendant Peterson managed the partnership, handled the funds, kept the books, and has failed and refused to account to the plaintiff for capital advanced or for the profits of the partnership; that $3,500 of partnership funds are secreted in a safety deposit box of Clarence L. Peterson, Jr., son of defendant.

For a second cause of action, plaintiff alleges that he purchased a membership in the Omaha Live Stock Exchange, paying $500 cash and giving his note for the balance, $1,650, which was to be paid at the rate of $50 a month from plaintiff's salary, and that said note was paid by defendant with funds of the firm.

The defendant, Clarence L. Peterson, denied all the allegations in the plaintiff's petition, and alleged that the membership in the Omaha Live Stock Exchange is his sole and exclusive property. Clarence L. Peterson, Jr., denied all the

allegations relative to him, and alleged that the $3,500 in his safety box was his sole and separate property and not that of plaintiff or the O. K. Commission Company. This last named defendant disclaimed all interest in the membership.

At the outset, it is necessary to determine whether or not a partnership existed. The existence of a partnership is a question of fact under the evidence. *Blue Valley State Bank v. Milburn,* 120 Neb. 421, 232 N. W. 777. More convincing evidence is required to prove existence of partnership where alleged partners are the only litigants than where the controversy is between a third party and the partners. *Sanley v. Davies,* 113 Neb. 614, 204 N. W. 385; *Norton v. Brink,* 75 Neb. 566, 106 N. W. 668.

Much testimony and many exhibits were introduced in evidence. Only the parties know whether there was a partnership agreement. Their testimony as to the alleged partnership is conflicting and irreconcilable. In such a case, the court must look for evidence which is not disputed, which will corroborate the testimony of one or the other party and indicate the probable truth of the situation. Litigants cannot reasonably complain if the court is unable to arrive at what they consider a just finding, when they enter upon important business transactions under such uncertain circumstances as the record reveals inaugurated the business of this firm. This alleged partnership was formed by an oral agreement. If the parties had made an effort to surround with secrecy the details of this venture, they could not have succeeded better. More uncertainty as to the nature of the business transaction could not have been obtained. Carlson alleges that the O. K. Commission Company was from January 15, 1934, a partnership between himself and Peterson. Peterson claims that he was doing business under the trade-name of O. K. Commission Company, and that Carlson was merely an employee at a salary of $150 a month. Neither the books nor the business transactions establish one claim to the exclusion of the other.

The formation of this partnership was more or less

casual. The concrete suggestion, according to Carlson, was expressed by Peterson in the following language: "Why don't you come into the commission business with me; you know you can make a lot more money in the' commission business than in farming. I will tell you what we will do; if you can raise a bond, we will go into the commission business fifty-fifty as partners."

At the time, September, 1933, Peterson had a business connection in the same line of business with R. M. Laverty under the name Laverty-O. K. Commission Company. He did not want it generally known that he was making different arrangements for conducting his business after January 1, 1934. This is offered as a reason why so much secrecy surrounded the conception of the new firm. Peterson also owned a ranch which was in the process of foreclosure, and he was fearful of a deficiency judgment which would handicap him in his business. Under the circumstances, we are invited to enter into a maze of evidence and are challenged to determine the terms and conditions of the partnership agreement, if one existed. We start with undisputed facts which are very meager. There was an O. K. Commission Company engaged in the live stock commission business at the Omaha Live Stock Exchange, and both plaintiff and defendant were connected with it in some capacity.

The corroborating evidence which the plaintiff relies upon to establish a partnership will be related briefly.

An account was opened with the Live Stock National Bank, and the bank was informed that the O. K. Commission Company was a partnership between Carlson and Peterson, and each was authorized to sign firm checks. The bank was informed by Peterson that the O. K. Commission Company was a partnership, and that Carlson and Peterson were the partners. The signature card prepared at Peterson's direction authorized both Carlson and Peterson to draw checks.

On January 13, 1934, the defendant Peterson filed a sworn statement with the Omaha Live Stock Exchange .re-

specting the ownership and the persons having interest in the profits and losses of the firm. He stated that these persons were Peterson and Carlson.

During the same month Peterson filed an application with the Bureau of Animal Industry of the United States government, for registration of the O. K. Commission Company, which he signed C. L. Peterson, partner, and stated that the O. K. Commission Company was a partnership and that the partners were Ed Carlson and Clarence L. Peterson.

An application for a bond was made in January, 1934, which was signed O. K. Commission Company, by Ed Carlson by Clarence L. Peterson, and by both individually and personally.

Carlson claims that he furnished $3,000, the original capital stock of the O. K. Commission Company. Peterson also claims that he furnished this capital of $3,000. Each claims that he furnished it in cash. Their testimony is not corroborated by that of any other witness who knew the facts. Cash is rather difficult to trace. These facts are established however: Carlson went to the bank with Morrill, bookkeeper for Peterson, on September 16, 1933, and deposited $3,000 in cash in an account of Carlson's. Morrill was to countersign checks on the account. Carlson at the same time issued a check for $3,000 countersigned by Morrill, payable to Peterson. This check was held by Peterson until January 13, 1934, when it was deposited in the Packers National Bank to the account of the O. K. Commission Company.

Peterson gives as a reason for the deposit in the name of Carlson his necessity for secrecy in the transaction. Morrill, the only one outside of the parties who may have had some knowledge of the source of this $3,000, is deceased. There is no way to determine definitely the source of this money from the record. But the fact that Peterson sent Morrill with Carlson to make the deposit and was immediately given a check by Carlson for the entire amount is persuasive that it was in fact Peterson's money.

In the fall of 1933, preparatory to launching in business

in January, Carlson purchased a membership in the Omaha Live Stock Exchange. It was purchased from the Stock Yards National Bank for $2,150, and $500 in cash was paid, and a note for $1,650 given the bank. An argument is presented here as to the ownership of this membership. Again there is no degree of certainty attainable as to who paid the $500. The record does not answer that Carlson did. There were some payments certainly made by Peterson ($175) between September and December, 1933. Carlson said he was to make these payments because of the delay in starting business. Thereafter, the payments on the note were paid with funds of the O. K. Commission Company. The final note of $1,022 was paid in such a manner, and Peterson took the membership which was held as collateral for the note, and the note. This is one note that is canceled by the decree of the trial court.

The O. K. Commission Company, whether a partnership or Peterson's trade-name, paid most, if not all, of the purchase price, and should own the membership. This court is unable to determine that either Carlson or Peterson made the original payments. The disposition of the membership is determined by our determination as to whether Carlson is a partner in a partnership known as the O. K. Commission Company.

The evidence that would corroborate Peterson's claim that there was no partnership is briefly stated. Carlson never drew a check on the firm account and never exercised any control over the affairs of the O. K. Commission Company. While Peterson was the manager and Carlson worked in the cattle yard, the evidence is that Carlson never employed or discharged a man or exercised any supervision or control over any employee. Carlson asked to draw his salary in advance at one time, but Peterson refused to permit him to do so. In February, 1935, Carlson gave Peterson a note for $300, which he had borrowed in February, 1934, to pay a doctor bill. This note was executed just prior to the demand for an accounting in this suit. In February, 1935, Carlson filed an income tax report in which he re-

ported his salary from the O. K. Commission Company, but made no report of profits or losses from the partnership. Every one of these acts of Carlson is inconsistent with his claim that he was a partner in the O. K. Commission Company. In addition to this, we find that he did not put up the capital of $3,000 or purchase with his private funds the membership in the Omaha Live Stock Exchange. In January, he states that he invested $3,000 in the capital of the firm and purchased a membership. In February, he borrowed money to pay a past-due doctor bill. Such inconsistent testimony cannot establish a partnership. The evidence tending to establish a partnership consists entirely of Peterson's statements, sufficient to create an estoppel to deny a partnership as to a third party, but not to establish the contractual relation between the parties.

These admissions are accounted for by the fact that Peterson required secrecy to surround this business arrangement so that his then business relation should not be prematurely disturbed. It was necessary to secure a bond to do business. Carlson could get the bond only if he had a bank account. Therefore, the original capital money of the firm was placed in his name. Furthermore, Peterson had another use for Carlson. He owned a ranch upon which a mortgage was being foreclosed, and he feared a deficiency judgment. He had no bank account at the time except the firm account. He was dealing with cash in rather large and unusual amounts.

The existence of a partnership depends upon the agreement of the parties, and their intention is to be ascertained from all the evidence and circumstances of a case. *McAlpine v. Millen,* 104 Minn. 289, 116 N. W. 583; *Shirley v. Straub,* 50 N. Dak. 872, 198 N. W. 675; *Sander v. Newman,* 174 Wis. 321, 181 N. W. 822. In this, a suit between the parties, we conclude that the evidence does not show the intention of the parties to contract a partnership, and that, therefore, the plaintiff's suit fails.

However, the plaintiff is entitled to some relief in equity. The trial court awarded him a judgment for $1,500 and the

cancelation of two notes, one for $300 and one for $1,022. The one for $300 was a loan from Peterson, and its cancelation amounted to an award of $300 plus the $1,500. The note for $1,022 was a renewal note signed by Carlson in payment of the balance due on the membership in the Omaha Live Stock Exchange. This should be canceled. There is evidence in the record that Peterson agreed with Carlson that he was to have an equal salary. The testimony is to the effect that the salaries of both Peterson and Carlson were to be $200 a month. Peterson, however, paid himself $300 a month. Carlson served Peterson's purpose for 15 months and is entitled to be paid for his service at the same rate as Peterson. He drew $150 a month only, leaving the sum of $2,250 due him, from which we subtract the amount of the $300 note, which leaves $1,950. The judgment of the trial court was $1,500. The decree is modified to this extent and, as modified, affirmed.

AFFIRMED AS MODIFIED.