THEODORE BAUM, APPELLEE, V. HAROLD G. MCBRIDE, APPELLANT.

10 N. W. (2d) 477

FILED JULY 13, 1943. No. 31609.

*Mothersead & Wright,* for appellant.

*F. J. Reed, contra.*

Heard before SIMMONS, C. J., PAINE, YEAGER, CHAPPELL and WENKE, JJ., and TEWELL and LIGHTNER, District Judges.

WENKE, J.

This action was commenced in the district court for Scotts Bluff county by Theodore Baum, plaintiff and appellee herein, against Harold G. McBride, defendant and appellant herein, to establish a partnership between the appellee and appellant entered into for the purpose of dealing in potatoes, for dissolution thereof, and for a determination of the rights of the partners therein. Upon the issues raised by the pleadings the court limited the trial to the matter of whether or not there was a partnership. From a judgment that the appellee and appellant doing business under the name of McBride Potato Company constituted a partnership, ordering a dissolution and liquidation thereof

and appointing a referee to take charge thereof for that purpose, and retaining further jurisdiction to determine the rights of the parties to the proceeds, McBride, appellant, has appealed.

The question presented by this appeal is whether or not a partnership existed. As stated in *Carlson v. Peterson*, 130 Neb. 806, 266 N. W. 608: "The existence of a partnership is a question of fact under the evidence," and further: "More convincing evidence is required to prove existence of partnership where alleged partners are the only litigants than where the controversy is between a third party and the partners." The burden of establishing the partnership is on the appellee.

A partnership has been defined in *Waggoner v. First Nat. Bank of Creighton,* 43 Neb. 84, 61 N. W. 112: "Copartnership is a contract of two or more competent persons to place their money, effects, labor, skill, or some or all of them, in lawful commerce or business, and to divide the profit or bear the loss in certain proportions."

Appellee testified that sometime in the first week of July, 1939, the appellant suggested that they put everything they had together and deal in potatoes and operate as fifty-fifty partners, to which the appellee consented; whereas, the appellant contends that, after he had talked with the appellee in the spring and then in the forepart of July, 1939, when he suggested he would make him a better deal, in the latter part of September of the same year he told the appellee that if he would stay with him five years, use his car, would not draw over $150 a month and would get his father to help in case they needed some credit he would give the appellee half of the profits, to which the appellee consented. In order to determine which of these parties is correct as to the agreement they made it will be necessary to consider all of the facts and circumstances disclosed by the evidence, for as stated in *Carlson v. Peterson, supra:* "The existence of a partnership depends upon the agreement of the parties, and their intention is to be ascertained from all the evidence and circumstances of a case."

In order to clarify the facts of this case it will be necessary to briefly explain the prior relationship of the parties. Appellant, under the name of McBride Potato Company, had been engaged in the potato business, which is commonly referred to as "potato deal," in the season 1938-1939 and prior thereto. In October of 1938 he employed appellee, a young man 24 years of age who lived on his father's farm in the vicinity of Mitchell, Nebraska, and who had been previously engaged as an inspector of potatoes for the federal government, for the purpose of buying potatoes. For about a month he bought potatoes on a commission basis and thereafter was paid $150 a month during the balance of that season. Sometime in the forepart of 1939, appellee and appellant entered into a fifty-fifty partnership for the purpose of spraying potatoes and to that end, under the name of McBride and Baum, purchased a sprayer and chemicals through the assistance of appellee's father who loaned them $1,000 in June, 1939.

The evidence discloses that in the summer of 1939 a potato washer and also potatoes were purchased out of the funds of McBride and Baum for the McBride Potato Company and subsequently all of the assets and liabilities of the partnership of McBride and Baum were, sometime in September of 1939, included with the assets of the McBride Potato Company as shown by the financial statement dated September 11, 1939, prepared by the appellant for the purpose of securing credit at the bank. It was agreed that in view of the established business of the appellant under the name of McBride Potato Company they would continue to use it in their business. Commencing with September, 1939, appellee started writing checks on the account of McBride Potato Company both for the purpose of buying potatoes and for his own expenses. About the latter part of October or the forepart of November, 1939, a carload of potato bags was received and appellee's father was then solicited to assist in financing the purchase thereof and he testifies that then and on other occasions thereafter when his credit was necessary to finance the business appellant

told him that Ted and he were fifty-fifty partners in the business each having a half and half interest therein. In the fall of 1939 they planned a warehouse at Mitchell, the construction of which was begun in October, 1939, and finished shortly before Christmas at a cost of something like $7,000. The contract, which was verbal, was given to John Mathson who testified that he discussed the matter with the appellant and appellee and that appellant told him they had a lease and they were going to put up the warehouse in partnership. In the spring of 1940 appellant and appellee attempted to negotiate a $5,000 loan from appellee's aunt, Katie Toensmier, who lived at York, Nebraska, and for this purpose appellee and appellant each took out a $5,000 life insurance policy made payable, as shown by the policy on appellee, to "Katie Toensmier, Creditor, or as her interest may appear, balance to Harold G. McBride, Partner;" the policy on appellant being the same except balance payable to Theodore Baum, partner. They also prepared a mortgage on certain items of the property of the McBride Potato Company made out as a partnership and signed by both appellee and appellant. During March of 1941 a partnership income tax return for the McBride Potato Company was made out and signed by the appellant. This return was dated March 15, 1941, and disclosed it as a partnership consisting of Hal McBride and Theodore Baum. Mr. W. O. French, whom the records show to be a public accountant, helped in preparing this return and he testified he received this information as to the partners from appellant and that he helped prepare a similar return for the year 1941, returned March 16, 1942, which likewise shows Hal McBride and Theodore Baum to be partners and is signed by appellant. The record further shows that in March, 1941, application was made for an R. F. C. loan and from the testimony of Mr. Wright, a banker, who helped prepare the application, the loan was to be made to Hal McBride and Theodore Baum. On July 26, 1940, a lease was entered into with the Union Pacific Railroad Company for a potato sorting platform at Gering, Nebraska, which lease

was signed by both appellee and appellant, witnessed by Mr. Clark, General Agent of the Union Pacific Railroad Company, and signed by appellee and appellant in each other's presence, which lease shows the McBride Potato Company as a partnership consisting of Hal McBride and Theodore Baum. The evidence shows that appellant was generally to do the selling and office work, his wife to do the book work therein, and the appellee was generally to do the buying and outside work and that each of them performed their duties. Appellee assisted with the plans and construction of the warehouse at Mitchell in the fall of 1939, likewise at Gering in 1940, and moved to Gering in October, 1940, to take charge of the warehouse. That up until he moved to Gering appellee continued to write checks against the funds of the McBride Potato Company but thereafter he drew drafts; that he lived in Gering until the season 1941-1942 when he moved back to Mitchell but continued to have charge of the Gering warehouse; that he signed most of the obligations of the company at the bank and to his father and signed the mortgages securing the same; and that he generally took part in the conduct and operation of the business.

To continue with a further detailed statement of the facts, as shown by the voluminous testimony and exhibits, would only necessitate unnecessarily extending this opinion. While the appellant testifies that he did not enter into an agreement with the appellee to conduct the potato business of the company on a partnership basis but rather on the basis of sharing the profit and denies that it was conducted as a partnership and testified as to the contents of letters exchanged between the parties in December of 1939, which contents appellee denies, to show that the parties did not consider themselves as partners in the business and adduced evidence of transactions of the company in which it was not designated as a partnership, however, from the record as a whole it shows by clear, satisfactory and convincing evidence that the parties entered into an agreement to put everything they had together and deal in potatoes and

to conduct the business of the company on a fifty-fifty partnership basis and that subsequent thereto the parties did put everything they had together and did conduct the business of the company on that basis and therefore the judgment of the lower court was right in holding it was a partnership.

Under the facts as herein determined those cases cited by appellant where a sharing of profits as compensation for the use of money or property or service does not constitute a partnership are not applicable.

The judgment of the lower court is affirmed.

AFFIRMED.