MERRITT H. JOHNSON, APPELLANT, V. MARY GRAF, APPELLEE.

75 N. W. 2d 916

Filed April 6, 1956. No. 33935.

*Phillip A. Tomek, John G. Tomek,* and *William E. Tomek,* for appellant.

*Dougherty & Reed* and *Wagner, Wagner & Robak,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

The plaintiff commenced this suit against Mary Graf, seeking to establish an oral partnership agreement between the parties, and for a decree dissolving such partnership, for an accounting, and for a division of profits. At the close of plaintiff's evidence the trial court sustained a motion to dismiss the action for the reason that the evidence was insufficient to establish a partnership. The plaintiff appeals.

The evidence on behalf of the plaintiff shows that in 1943 defendant was the owner of the Rondevous Tavern in Columbus, Nebraska, in which she was engaged in the sale of intoxicating liquors. Plaintiff testifies that on or about July 1, 1943, he met the defendant in her apartment and after talking over some business "she just comes up and grabs me and said - 'we are going to go in business', she says, 'And I want you to help me because I need a partner', and so it went on a little later, and she said - 'I want you to help me

because I need somebody to make business for me and help me get more business and customers in the place of business down here'. She said - 'we will and we will be partners'." Plaintiff testifies that he said he would do it, and that the partnership was to be a business secret because plaintiff was to do "all the hard work and make money and take all the raps for everything."

The plaintiff further testified that the partnership was to be kept secret because they contemplated selling liquor in violation of price regulations established by the federal government, that he was to take all raps for such violations and that the defendant was to be responsible to him for them, and in this way they would protect the money in the "sack." Plaintiff admits that he was paid $25 per week by the defendant for his services and that social security was deducted therefrom. This was admittedly paid for 4 or 5 years on the foregoing basis until defendant sold the tavern. The evidence is clear that when the previous bartender was discharged the defendant offered the job to plaintiff, and he accepted it at once. It is shown by the evidence that plaintiff tended bar, ordered whiskey and other supplies, and at times appeared to be in sole charge of the tavern, none of which activities was exclusively consistent with a partnership relation. There is evidence in the record that several tracts of real estate were purchased and sold at considerable profit. In each instance such real estate was paid for by the defendant and the title taken in her name. It is true that plaintiff assisted in these transactions by inspecting and recommending purchases and seeking purchasers for the resale of such lands. In every instance, however, defendant furnished the money with which to buy and retained possession of all money resulting from the sales. The record shows that plaintiff had experience as a stock buyer and that he purchased and sold some cattle and hogs while in the employ of defendant. De-

fendant furnished the money for these purchases and retained the proceeds from their sale. Plaintiff continued to buy and sell livestock for himself to a limited extent during this same period.

The record shows that in November 1948 and March 1949 plaintiff found it necessary to borrow money from the Central National Bank of Columbus. Plaintiff was unable to pay the notes when due. The defendant guaranteed the payment of the balance due on the notes and the interest due thereon by a formal instrument appearing in the record bearing the date of September 6, 1949.

There is evidence also that plaintiff and defendant each invested in the development of an oil well in which each appears to have lost money. There is no competent evidence that the oil well adventure was a partnership operation by the parties to this litigation.

It is shown that a modern home of the approximate value of $40,000 was built and occupied by the plaintiff and the defendant. The title was in the defendant. The defendant was a widow and plaintiff was divorced from his wife. The evidence indicates that a rather intimate relationship existed between these two parties and that they both lived in this new home until plaintiff became ill and was removed to a hospital. It is shown that plaintiff was afflicted with a nervous or mental condition, and after his release from the hospital defendant had no further transactions with him, business or otherwise.

The burden of establishing the existence of a partnership is upon the party asserting that such relationship exists. Baum v. McBride, 143 Neb. 629, 10 N. W. 2d 477. More convincing evidence is required to prove the existence of a partnership where the alleged partners are the only litigants than where the controversy is between a third party and the alleged partners. Carlson v. Peterson, 130 Neb. 806, 266 N. W. 608; Baum v. McBride, *supra*.

The evidence of the oral agreement to form a partnership is very indefinite as to its terms. It was not stated what the contributions of each to the partnership were to be; nor does such evidence indicate the interest of each in the profits and losses. The evidence of plaintiff does not state the extent of the business of the partnership, although it was indicated the partnership contemplated, if it in fact existed, the handling of intoxicating liquors by the package and by the drink. There is no evidence in the record tending to establish a partnership for the handling of real estate, the buying and selling of livestock, or the drilling and operation of oil wells.

The only evidence of an oral partnership agreement was that of the plaintiff and is clearly related to the operation of the tavern only. In explaining why he was to be a silent partner in the venture he stated that it was because they intended to sell intoxicating liquors in violation of government price regulations then in effect, that he would take all the raps which defendant would take care of, and in that manner their profits would be protected. A partnership may not be formed for an illegal purpose or for contracting business in a manner contrary to public policy. Even though it be lawful to sell intoxicating liquors, a partnership agreement to engage in the liquor traffic in an illegal manner will not be enforced. A court will not aid either party to an illegal agreement. When a partnership is formed to conduct a lawful business in an illegal manner, the courts will not recognize its existence and will not lend their aid to assist either one of the parties thereto in an action against the other. Perry v. Berger, 85 Neb. 753, 124 N. W. 133; Bohy v. Abbott, 154 Neb. 139, 47 N. W. 2d 95.

The plaintiff contends that the question of the illegality of the partnership agreement cannot be here considered for the reason that such issue was not pleaded as a defense. The controlling rule is stated in 68 C. J.

S., Partnership, § 7, p. 412, as follows: "The illegality of the partnership contract need not be pleaded as a defense, but may be taken advantage of whenever it appears in the course of a trial; and, if it is not so pleaded, the court may inquire into the nature of the partnership contract, and, if its illegality or opposition to public policy appears, may refuse to adjudicate on alleged rights which are dependent on it." See, also, Fitzgerald v. Fitzgerald & Mallory Construction Co., 44 Neb. 463, 62 N. W. 899; Wright v. Cudahy, 168 Ill. 86, 48 N. E. 39. The illegality of the partnership agreement appearing as a part of plaintiff's proof, the court could properly refuse to adjudicate any rights purporting to arise out of such agreement.

The evidence as a whole does not tend to support a finding that a partnership agreement as asserted by the plaintiff was ever contemplated. The evidence shows that on July 1, 1943, the date of the alleged agreement, the plaintiff and defendant were living in the same apartment under circumstances which necessarily bear upon the nature of their subsequent relationship. About this time defendant discharged the bartender at the Rondevous Tavern and offered the job to plaintiff. He accepted it and was paid $25 per week for his services. Deductions for social security were made. This situation existed until the tavern was sold 4 or 5 years later. The evidence bears out the statement that defendant made money which she invested in real estate and livestock. Plaintiff alleges that she accumulated between $200,000 and $250,000 during the period involved in this suit. There is nothing in writing of any kind that would indicate any interest in it on the part of the plaintiff. Defendant paid for all lands and livestock purchased, retained the title thereto in her own name, and retained all money obtained from sales thereof. It hardly seems probable that a partner would permit such a situation to continue to exist for so many years without some evidence of his claimed 50 percent interest in such a large

accumulation of profits. The evidence shows his lack of credit with financial institutions and the necessity for having defendant guarantee past-due notes on which only $1,200, or thereabouts, remained unpaid. It is beyond all comprehension that one having a one-half interest in $200,000, or more, should call upon the holder of the fund to guarantee notes aggregating less than $1,200. It would seem that one having such a partnership agreement, and under which such a sum was accumulated, would not wait approximately 10 years before instigating suit when he was in need of money during all the period. The inferences to be drawn from the facts as detailed in the record by the plaintiff point to the nonexistence of a partnership agreement and appear more worthy of belief than the conclusions to which he testifies. We find it difficult to give much credence to the evidence of the plaintiff. His evidence is conflicting. He could not seem to understand the most simple questions. His halting replies were confused and often unintelligible. He could not remember on one day what he had testified to the day before. On one occasion he stated: "Yes. I am always crazy. I know that." His evidence was weak and unconvincing. He was able to produce no evidence of a corroborating nature that pointed exclusively to a partnership arrangement. The evidence was clearly insufficient to sustain a finding that a partnership existed. It is proper under such circumstances for the trial court to dismiss the action at the close of plaintiff's evidence. The district court correctly sustained the motion to dismiss the action and its judgment must therefore be affirmed.

AFFIRMED.