Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:08 PM CDT

ELAINE CLEMENS, APPELLANT, V. CURTIS EMME,
PERSONAL REPRESENTATIVE OF THE ESTATE OF
ARTHUR D. EMME, DECEASED, APPELLEE.

___ N.W.3d ___

Filed June 7, 2024.    No. S-23-146.

1. **Judgments: Estoppel: Appeal and Error.** An appellate court reviews a court's application of judicial estoppel to the facts of a case for abuse of discretion and reviews its underlying factual findings for clear error.

2. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.

3. **Directed Verdict: Evidence: Appeal and Error.** A directed verdict is proper only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. In reviewing that determination, an appellate court gives the nonmoving party the benefit of every controverted fact and all reasonable inferences from the evidence.

4. **Judgments: Verdicts: Appeal and Error.** Review of a ruling on a motion for judgment notwithstanding the verdict is de novo on the record.

5. **Judgments: Verdicts.** To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion.

6. ____: ____. On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted that is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence.

7. **Motions for New Trial: Appeal and Error.** An appellate court reviews the denial of a motion for new trial for an abuse of discretion.

8. **Equity: Estoppel.** Judicial estoppel is an equitable doctrine that a court invokes at its discretion to protect the integrity of the judicial process.

9. **Estoppel.** The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.

10. ____. Judicial estoppel is to be applied with caution so as to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.

11. **Hearsay: Words and Phrases.** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

12. **Trial: Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.

13. ____: ____: ____. The exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection.

14. **Trial: Evidence: Testimony.** Where the information contained in an exhibit is, for the most part, already in evidence from the testimony of witnesses, the exclusion of the exhibit is not prejudicial.

15. **Partnerships: Intent.** Being "co-owners" of a business for profit does not refer to the co-ownership of property, but to the co-ownership of the business intended to garner profits.

16. **Partnerships: Words and Phrases.** Co-ownership distinguishes partnerships from other commercial relationships such as creditor and debtor, employer and employee, franchisor and franchisee, and landlord and tenant.

17. **Partnerships.** Co-ownership generally addresses whether the parties share the benefits, risks, and management of the enterprise such that (1) they subjectively view themselves as members of the business rather than as outsiders contracting with it and (2) they are in a better position than others dealing with the firm to monitor and obtain information about the business.

18. **Partnerships: Proof.** The objective indicia of co-ownership are commonly considered to be: (1) profit sharing, (2) control sharing, (3) loss sharing, (4) contribution, and (5) co-ownership of property. The five indicia of co-ownership are only that; they are not all necessary to establish a partnership relationship, and no single indicium of co-ownership is either necessary or sufficient to prove co-ownership.

19. ____: ____. The party asserting the partnership relationship exists has the burden of proving that relationship by a preponderance of the evidence.

20. **Pleadings: Evidence: Waiver: Words and Phrases.** A judicial admission, as a formal act done in the course of judicial proceedings, is a substitute for evidence and thereby waives and dispenses with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by an opponent is true.

21. **Pleadings: Intent.** Judicial admissions must be deliberate, clear, and unequivocal, and they do not extend beyond the intent of the admission as disclosed by its context.

Appeal from the District Court for Holt County, Mark D. Kozisek, Judge. Affirmed.

Frederick T. Bartell, of Fitzgerald, Vetter, Temple, Bartell & Henderson, for appellant.

Tracey L. Buettner, of Stratton, DeLay, Doele, Carlson, Buettner & Stover, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## I. INTRODUCTION

This case concerns an alleged business partnership between the appellant and the decedent, who were also intimate partners, but who never married. After the jury found against the appellant as to the existence of a business partnership, the district court for Holt County, Nebraska, entered a judgment against her and in favor of the personal representative of the decedent's estate. The appellant challenges the jury's verdict, as well as several rulings by the district court. Finding no error, we affirm.

## II. BACKGROUND

### 1. Factual Background

The decedent, Arthur Emme (Butch), established O'Neill Body and Frame in O'Neill, Nebraska, in 1978. Butch's

then-wife acted as his bookkeeper. She filed for divorce in 1990.

Around that time, the appellant, Elaine Clemens, began working at O'Neill Body and Frame. Clemens and Butch later became intimately involved. They moved in together in 1992. Thereafter, Clemens and Butch lived together while working together at O'Neill Body and Frame and at other ventures, including O'Neill Truck Service, two apartment complexes, and cattle and ranching operations.

Clemens and Butch had a falling out in March 2015. Clemens alleges that Butch subsequently closed or removed her name from several bank accounts.

Butch died on June 14, 2017. Butch's last will and testament left the bulk of his estate to his son, Curtis Emme (Emme), who was appointed copersonal representative of the estate. Randy Hupp, Butch's friend and former banker, was also appointed copersonal representative of the estate but later resigned from that position. Hupp is not a party to the present appeal.

## 2. Clemens Files Suit Seeking Declaration That Partnership Existed

On August 24, 2017, Clemens filed suit against Emme and Hupp, as the copersonal representatives of Butch's estate, alleging that she and Butch created a business partnership in 1992. Clemens acknowledged that the partnership did not use a name and was not memorialized in a written agreement, but she alleged that it continued until Butch dissociated from it due to his death.[1] Clemens further alleged that before his death, Butch breached his duties of loyalty and care to the partnership. Clemens sought a declaration that a business partnership existed between her and Butch, with each owning equal interests in the partnership. Clemens also sought an order accounting for and settling partnership assets and debts

---

[1] See Neb. Rev. Stat. § 67-431(7)(a) (Reissue 2018) (partner who is individual is dissociated from partnership upon partner's death).

and distributing such assets and debts equitably, as well as related relief.

In their answer, Emme and Hupp denied Clemens' allegations as to the business partnership and alleged affirmative defenses. Among those defenses was a request that if a business partnership was found to exist, it include Clemens' rental properties.

### 3. Proceedings Regarding Judicial Estoppel

Clemens moved for partial summary judgment on the ground that Emme and Hupp were "estoped and precluded from denying the existence of a partnership" between her and Butch. In support of that claim, Clemens pointed to statements that she and Butch made about their relationship during an earlier action to surcharge Clemens, in her capacity as the personal representative of the estate of Butch's ex-wife, for allegedly breaching her fiduciary duties to the estate.[2] Clemens also pointed to language in the opinion of the Nebraska Court of Appeals affirming the district court's denial of the surcharge petition, which opinion described Clemens as Butch's "business partner and significant other."[3]

The district court overruled Clemens' motion for partial summary judgment because it found that there was, at a minimum, a genuine issue of material fact as to the business relationship between Clemens and Butch. Specifically, the district court declined to attribute the same significance that Clemens did to Butch's reference to her as "[his] secretary . . . [b]usiness partner" during his deposition in the surcharge action. The district court found that this statement failed to eliminate any question as to whether Clemens and Butch were business partners. The district court also found that the statement was inconsistent with Butch's testimony at the trial in

---

[2] *In re Estate of Murphy*, No. A-12-1001, 2014 WL 396249 (Neb. App. Feb. 4, 2014) (selected for posting to court website).

[3] *Id*. at \*1.

the surcharge action that Clemens was "[his] secretary. But partner in the business, the ownership of it, [he was] the sole proprietor of [his] property."

As to Clemens' own statement during the surcharge action that she was Butch's business partner, the district court found it was immaterial because for judicial estoppel to apply, there would need to be a change in position by Butch. The district court similarly found that the Court of Appeals' statement that Clemens was Butch's business partner was dictum because it was not necessary to the decision of the surcharge action.

Clemens then filed an amended reply, again asserting that Emme and Hupp were judicially estopped, or barred by the doctrine against inconsistent positions, from asserting that a business partnership did not exist between her and Butch.

After a bench trial, the district court entered a judgment in favor of Emme and Hupp and against Clemens on the issue of judicial estoppel and dismissed that theory of recovery with prejudice. In so doing, the district court rejected Clemens' argument that in the surcharge action, Butch took the position that they were business partners when he testified as follows: "Q. . . . Clemens testified yesterday that [she was his] partner; is that correct? A. Yes." The district court observed that Butch's testimony could be construed to mean either that Butch agreed Clemens was his partner or that Butch agreed Clemens had testified she was his partner. The district court also observed that "partner was not defined" and could mean a business partner or a domestic partner. In addition, the district court observed that Butch had otherwise testified that "[he was] the sole proprietor of [his] property." The district court took a similar view of statements that Butch made describing Clemens as his "business manager and secretary" and "his secretary and . . . business partner."

The district court also found that Butch did not assert any position that was adopted by the court in the surcharge action, as is required for judicial estoppel. The district court observed that while Butch was named in the caption of the petition for

surcharge, he was apparently never served with summons and never made a party, no claim for refund from him appeared in the record, and all issues raised adversely to Clemens in that action were resolved without resort to any claimed position taken by Butch. As to the Court of Appeals' statement that Clemens was Butch's business partner, the district court concluded that it was a "gratuitous comment" and not a finding of fact, as Clemens argued.

## 4. Proceedings Regarding Partnership

A jury trial was then held regarding the existence of a business partnership between Clemens and Butch. The evidence adduced at the trial was voluminous. We summarize it below as it pertains to the primary arguments raised by Clemens on appeal.

### (a) Formation of Partnership

Clemens testified that she and Butch formed a partnership in the summer of 1990, after she went to O'Neill Body and Frame to apply for a job. Clemens testified that Butch initially told her that "he needed somebody in the office." Clemens also testified that several days after this conversation, Butch came to her house and told her that his then-wife had served him with divorce papers. According to Clemens, Butch said that his then-wife "always worked with [him]" and that he "need[ed] a new partner to come and work with [him]." Clemens stated that she began working at O'Neill Body and Frame several days later, without any discussion of her title or compensation. Clemens also testified that the partnership subsequently expanded to other ventures and that she contributed primarily services to the partnership.

In contrast, an employee who worked at O'Neill Body and Frame when Clemens started working there testified that Butch told him in August 1990 that Clemens was being "[brought] in to run the books, take care of the financials, office manager, secretary." The employee also testified that

he did not believe Clemens "was coming in as [his] boss" or Butch's partner. Emme, who himself worked for O'Neill Body and Frame from 1991 to 2000, testified similarly that during his time there, Butch was "in charge of the towing operation" and Clemens was the business manager and secretary, although she also went on tow calls. Emme also testified that in his subsequent review of the company's documents after his father died, he found "a lot" of documents identifying Clemens as the business manager, but he "never located a single document . . . that referenced her as a partner."

### (b) Clemens' and Butch's References to One Another

Several witnesses testified that they heard Clemens and Butch describe themselves as "business partner[s]" or "partner[s]." However, other witnesses testified that they could not recall Clemens or Butch making such statements. Among those who could not recall Clemens or Butch mentioning a partnership were Hupp and Butch's accountants, both of whom testified that they would have "done things differently" if they had been told of a business partnership.

There was also evidence of a flyer for O'Neill Body and Frame that stated, "Butch & Elaine Emme, Owners & Operators." Clemens testified that Butch drafted the flyer and paid for it out of the O'Neill Body and Frame account, and one of her witnesses recalled seeing the poster "around town." However, other witnesses testified that they never saw the flyer or heard Butch refer to Clemens as "Elaine Emme."

In addition, there was a letter written by Clemens to a prospective employee inviting him to come "work for us" at O'Neill Body and Frame. Clemens signed the letter as the business manager.

### (c) Alleged Cocontrol

Several witnesses testified that Clemens interviewed or hired them for positions at O'Neill Body and Frame and

instructed them on their duties. The witnesses also described Clemens and Butch working "[h]and in hand," "as a team," on tow calls at all hours and in all weather. There was similar testimony that Clemens bid on and calved cattle and consigned them for sale. In addition, Clemens described helping Butch to determine what price to offer for a parcel of real property and "physically sitting next to [him] when he was bidding." Clemens similarly described furnishing the apartments, drafting leases, and dealing with tenants. Clemens opined that Butch could not have drafted certain documents because he did not "read and write very well." Other witnesses testified that "financial documents [were] not [Butch's] forte."

Emme's witnesses, however, testified that Butch was "in charge" and "always had the last word." One witness testified that on tow jobs, Clemens was "usually on the controls," but "Butch would tell her" what to do. This witness also testified that "if [Clemens] had to order parts, [Butch] would tell her what kind of parts." The offer to the prospective employee similarly stated that all "after hours in the shop" and "[w]ork in the shop on [the employee's] own vehicles" must be cleared with Butch, although Clemens testified that she could have given permission. Emme's witnesses also disputed the suggestion that Butch had difficulty comprehending financial statements or other documents.

### (d) Bank Accounts

Witnesses for both parties agreed there were "[p]erhaps as many as five" bank accounts that listed Clemens and Butch as joint owners or that were partnership or multiple-party accounts. One of those accounts was the checking account for O'Neill Body and Frame, which apparently financed many of the alleged partnership's activities, as well as Clemens and Butch's household. Clemens was a co-owner and joint tenant with rights of survivorship on that account from 1995 to 2007. Hupp testified that in light of that designation, Clemens was "an owner of th[e] account" during that period.

But Hupp also testified that the account's paperwork was "contradictory" because it indicated a sole proprietorship.

According to Hupp, at one time, the bank listed multiple names on sole proprietorship accounts "so that they could have [an] authorized signer on there." However, Hupp testified that this practice was discontinued in 2007 because it was "unclear and not correct." Hupp also testified that in 2007, Clemens was changed to an authorized signer on the O'Neill Body and Frame checking account. Clemens testified similarly that in 2007, "[t]he bank . . . changed their rules and said that they couldn't have a joint ownership on an account with a sole proprietor." But Clemens testified that she was told "everything else remained the same" and that she did not "intend to relinquish any rights [she] may have had" when she agreed to the change.

There was also evidence of several bank accounts owned solely by Butch with Clemens as an authorized signer.

### (e) Real Property

Witnesses for both parties also agreed that all real estate, personal property, and vehicles of the alleged partnership were in Butch's name and listed only on Butch's personal financial statements, not those of Clemens. Clemens testified that the real property, in particular, was in Butch's name because "[h]e liked to be able to go up to the land map and say, It says Arthur D. Emme. He liked . . . to be able to say that it was his. I think they call it a grandiose syndrome." Clemens testified similarly that the personal financial statements were "done to satisfy banks" and were not "designed to be entirely accurate."

Clemens acknowledged that she owned multiple parcels of property, collectively valued at $600,000, solely in her name, but she maintained that Butch "didn't want to be on" her properties. Clemens also acknowledged that she signed Butch's name on, witnessed, or notarized documents describing alleged partnership properties as belonging solely to him.

(f) Tax Documents and Ledgers

Witnesses for both parties similarly agreed that no partnership tax returns were filed and that the assets and losses of O'Neill Body and Frame were always listed on the Schedule C of Butch's individual tax returns. However, Clemens testified that the ledgers of O'Neill Body and Frame showed payments to her in and after 1999, when she no longer received "W-2s or 1099s" from the company. Clemens testified similarly that while the payments to her were initially for "[o]dd number[s]," apparently meaning that they included fractions of a dollar, the payments after April 1995 were for "even" numbers. Clemens maintained that the ledgers showed that she received a "flat draw," without withholding, as a partner, although she conceded that the ledgers did not reflect payments to Butch.

A former employee of O'Neill Body and Frame, however, testified that he received an "even" amount, but that this was not a draw and that he was not a partner. This employee also testified that the company gave him a "1099," rather than a "W-2," so that "[he] didn't have to pay taxes" and "they didn't pay [his] Social Security." Other witnesses testified similarly that Butch "wanted to pay labor in cash" in part "[t]o avoid paying taxes."

(g) Other Evidence

There was evidence that Clemens and Butch co-owned a livestock brand in 2010-13. However, Emme testified that the brand was previously owned by his mother's family, and the brand's ownership was subsequently transferred to him and Butch.

Clemens also testified about "going to court" for O'Neill Body and Frame. Several of the cases described were in small claims court, and Clemens acknowledged that "in terms of . . . representing O'Neill Body and Frame in court, [she was] or would have had to have been [a] designated representative to do that."

### 5. MOTION FOR DIRECTED VERDICT

At the close of all the evidence, Clemens moved for a directed verdict in her favor, on the grounds that Emme and Hupp "both testified under oath" to all elements of a business partnership. Specifically, Clemens argued that Emme and Hupp had admitted that she and Butch were "two or more people" who "joined together," both contributing money, services, or property, for purposes of associating to carry on a business for profit and divide and share in the profits. Clemens also argued that Butch's testimony in the surcharge action constituted a judicial admission, requiring that a verdict be directed in her favor. Emme disagreed.

The district court overruled Clemens' motion. In so doing, the district court observed that for a judicial admission, a party must testify clearly and unequivocally as to a fact within the party's knowledge. But the district court was not persuaded Emme or Hupp had "facts within their knowledge as far as the sharing of the profits, the intent of the parties and that sort of thing."

### 6. JURY VERDICT AND JUDGMENT

The jury found that Clemens failed to meet her burden of proof establishing that a partnership existed and failed to meet her burden of proof establishing a presumption that a partnership existed under Neb. Rev. Stat. § 67-410(3)(c) (Reissue 2018). The district court then entered judgment in favor of Emme and against Clemens and dismissed Clemens' complaint with prejudice.

Clemens subsequently moved for judgment in her favor notwithstanding the verdict or, alternatively, that the verdict be set aside and a new trial be granted. That motion was overruled.

Clemens appealed, and we moved the matter to our docket.[4]

---

[4] Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

### III. ASSIGNMENTS OF ERROR

Clemens assigns, restated and reordered, that the district court erred (1) in entering judgment in favor of Emme and against her on the issue of judicial estoppel and related theories and related theories of recovery, (2) in its rulings on alleged hearsay testimony, and (3) in refusing to enter a directed verdict in her favor at the close of all evidence and in overruling her motion to set aside the verdict and for a new trial. Clemens also alleges that the jury verdict was clearly wrong and was not supported by competent evidence.

### IV. STANDARD OF REVIEW

[1] An appellate court reviews a court's application of judicial estoppel to the facts of a case for abuse of discretion and reviews its underlying factual findings for clear error.[5]

[2] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.[6]

[3] A directed verdict is proper only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.[7] In reviewing that determination, an appellate court gives the nonmoving party the benefit of every controverted fact and all reasonable inferences from the evidence.[8]

[4-6] Review of a ruling on a motion for judgment notwithstanding the verdict is de novo on the record.[9] To sustain a motion for judgment notwithstanding the verdict, the court

---

[5] *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022).

[6] *Paw K. v. Christian G.*, 315 Neb. 781, 1 N.W.3d 467 (2024).

[7] *In re Estate of Koetter*, 312 Neb. 549, 980 N.W.2d 376 (2022).

[8] *Id.*

[9] *Id.*

resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion.[10] On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted that is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence.[11]

[7] An appellate court reviews the denial of a motion for new trial for an abuse of discretion.[12]

The standard under which we review the jury's verdict requires more discussion. Clemens points to our decision in *In re Dissolution & Winding Up of KeyTronics*[13] to suggest that we try factual questions de novo on the record and reach a conclusion independent of the findings of the trial court because hers is an action for the dissolution of a partnership and an accounting between partners, and such an action is one in equity.[14] Clemens is correct that in *In re Dissolution & Winding Up of KeyTronics*, we stated that in considering the proper standard of review for the question of the existence of a partnership, we apply the standard of review generally applicable to the underlying action.[15] We also stated that an action for the dissolution of a partnership and an accounting between partners is one in equity and that such actions are generally reviewed de novo on the record.[16]

---

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *In re Dissolution & Winding Up of KeyTronics*, 274 Neb. 936, 744 N.W.2d 425 (2008).

[14] See, e.g., *id.*

[15] *Id.*

[16] *Id.*

However, prior to *In re Dissolution & Winding Up of KeyTronics*, we stated that where the existence of a partnership is in dispute and the evidence is contradictory, the question is for the jury under appropriate instructions. Our earlier cases also stated that the verdict of a jury in such a case "will not be set aside on the ground that it is against the weight of testimony, unless it is clearly so."[17]

In the present case, though, we need not resolve the tension between these two lines of cases because the evidence here is insufficient under either standard to establish that a partnership existed.[18]

## V. ANALYSIS

### 1. Emme Was Not Estopped From Denying Existence of Business Partnership

Clemens' first assignment of error concerns the district court's finding that Emme was not judicially estopped, or barred by the doctrine of inconsistent positions, from denying that she and Butch were business partners. Clemens claims that "[w]hile sworn to tell the truth, under oath, during the surcharge trial," Butch unequivocally agreed that it was "correct" that she had testified she was "[his] partner."[19] Clemens also claims that there were "[n]umerous other instances of Butch referring to [her] as his partner" during the surcharge action.[20] As a result, Clemens argues that Emme should not have been allowed to deny the existence of a business partnership between her and Butch. Emme, on the other hand, argues

---

[17] *McCann v. McDonald & Co.*, 7 Neb. 305, 309 (1878). See, also, *Blue Valley State Bank v. Milburn*, 120 Neb. 421, 232 N.W. 777 (1930); *Waggoner v. First Nat. Bank of Creighton*, 43 Neb. 84, 61 N.W. 112 (1894).

[18] See *In re Estate of Wells*, 221 Neb. 741, 380 N.W.2d 615 (1986).

[19] Brief for appellant at 36.

[20] *Id*. at 37.

that the doctrines of judicial estoppel and inconsistent positions "do[] not apply to the facts of this case."[21]

[8,9] Judicial estoppel is an equitable doctrine that a court invokes at its discretion to protect the integrity of the judicial process.[22] The doctrine of judicial estoppel "protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding."[23]

[10] Fundamentally, the intent behind the doctrine of judicial estoppel is to prevent parties from gaining an advantage by taking one position in a proceeding and then switching to a different position when convenient in a later proceeding.[24] In other words, the doctrine is designed to ""prevent parties from playing fast and loose with the courts."""[25] Judicial estoppel is, however, to be applied with caution so as to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.[26] We have also held that before a court may apply the doctrine of judicial estoppel, "'bad faith or an actual intent to mislead on the part of the party asserting inconsistent positions must be demonstrated.'"[27]

In light of the foregoing principles, we find that even if Butch were seen to have been a party to the surcharge action for purposes of the application of the doctrine of judicial estoppel, his position in that action was not inconsistent with Emme's position here, because Butch never unequivocally

---

[21] Brief for appellee at 16.

[22] *Becher, supra* note 5.

[23] *Id*., 311 Neb. at 20, 970 N.W.2d at 488.

[24] *Id*.

[25] *Id*.

[26] *Id*.

[27] *Id*.

stated that Clemens was his business partner.[28] Clemens relies primarily upon the following testimony by Butch in the surcharge action: "Q. . . . Clemens testified yesterday that [she was his] partner; is that correct? A. Yes." However, Butch's statement can be construed in several ways, as the district court observed. The statement could mean that Butch agreed Clemens was his partner or that Butch agreed Clemens had testified she was his partner. The statement could also refer to a business partner or an intimate partner. Moreover, immediately after the exchange in question, Butch testified that Clemens was "[his] secretary. But partner in the business, the ownership of it, [he was] the sole proprietor of [his] property." There is similar ambiguity in Butch's other statements in the surcharge action, including his description of Clemens as "[his] secretary . . . [b]usiness partner."

Furthermore, even if Butch were seen to have taken the position that Clemens was his business partner, the result would be the same because that position was not successfully asserted in the surcharge action. As we have explained, for a party to have successfully asserted a position in a prior action for purposes of judicial estoppel, "the party must have been successful in getting the first court to accept the position."[29] "[A]bsent such acceptance, the doctrine of judicial estoppel does not apply."[30] Judicial acceptance does not require that a party prevail on the merits.[31] However, the position urged by

---

[28] Cf., *deNourie & Yost Homes v. Frost*, 295 Neb. 912, 893 N.W.2d 669 (2017) (claim for breach of contract not inconsistent with fraud claim, where fraud claim was premised on existence of contract); *Burns v. Nielsen*, 273 Neb. 724, 732 N.W.2d 640 (2007) (not necessarily inconsistent for employer to contest compensability of injury before Workers' Compensation Court and also claim subrogation interest in proceeds of third-party settlement).

[29] *Jardine v. McVey*, 276 Neb. 1023, 1032, 759 N.W.2d 690, 697 (2009).

[30] *Id*.

[31] *Western Ethanol Co. v. Midwest Renewable Energy*, 305 Neb. 1, 938 N.W.2d 329 (2020).

the party must have been "adopted" by the first court "either as a preliminary matter or as part of a final disposition."[32]

For example, in *TFF, Inc. v. SID No. 59*,[33] we found that the plaintiff was judicially estopped from asserting that the SID's assessments were invalid in a claim against the SID. We did so because the plaintiff had previously recovered a judgment from another party on a claim for breach of contract that was premised on the theory that the SID's assessments were valid.[34] We took a similar view in *O'Connor v. Kearny Junction*.[35] In that case, a landlord sought to assert that a condition precedent for an option to purchase real property had not been met in response to a claim for damages for the landlord's delay in allowing the purchase of the property.[36] We found that the landlord was judicially estopped from doing so because the landlord had previously persuaded the court to order the sale of the property on the theory that the option had been duly exercised.[37]

Here, in contrast, the position that Clemens and Butch were business partners was not adopted by the court in the surcharge action as a preliminary matter or as part of the final disposition. In fact, the petition in the surcharge action alleged that it was the "intimate relationship" between Clemens and Butch, and not their alleged business partnership, that caused Clemens' dealings with Butch, in her capacity as personal representative of Butch's ex-wife's estate, to conflict with her

---

[32] *Id*. at 19, 938 N.W.2d at 344.

[33] *TFF, Inc. v. SID No. 59*, 280 Neb. 767, 790 N.W.2d 427 (2010).

[34] *Id*.

[35] *O'Connor v. Kearny Junction*, 295 Neb. 981, 893 N.W.2d 684 (2017).

[36] *Id*.

[37] *Id*. Cf., *Western Ethanol Co., supra* note 31; *Hike v. State*, 297 Neb. 212, 899 N.W.2d 614 (2017); *Jardine, supra* note 29; *Stewart v. Bennett*, 273 Neb. 17, 727 N.W.2d 424 (2007); *In re Loyal W. Sheen Family Trust*, 263 Neb. 477, 640 N.W.2d 653 (2002); *Vowers & Sons, Inc. v. Strasheim*, 254 Neb. 506, 576 N.W.2d 817 (1998); *Melcher v. Bank of Madison*, 248 Neb. 793, 539 N.W.2d 837 (1995).

duties to the estate.[38] The court's decisions in the surcharge action were similarly based on matters other than the existence of the alleged business partnership. Specifically, the court ruled in Clemens' favor and against the surcharge petitioner because the petitioner failed to meet his "initial burden of proof to show that Clemens' [dealings] benefited [her] at the estate's expense."[39]

It is true that the Court of Appeals described Clemens as Butch's "business partner" in its opinion affirming the denial of the surcharge petition.[40] However, that statement, which was made in the opinion's opening paragraph, prior to the recitation of the background facts, cannot be seen to have been adopted by the Court of Appeals, because it played no role in the Court of Appeals' conclusion that the petitioner failed to produce evidence showing the value of over 200 items of Butch's ex-wife's personal property that Clemens allegedly failed to account for or showing that Butch's bill for hauling personal property for the estate was excessive.[41] Instead, the statement was dictum, as the district court observed.

Clemens argues that the Court of Appeals' statement is not dictum because it did not concern "'some question of law.'"[42] Clemens bases this argument on a 1924 opinion of this court, wherein we define dictum as "'[a]n opinion expressed by a court upon some question of law which is not necessary to the decision of the case before it.'"[43] However, we elsewhere define dictum more broadly to mean a "judicial opinion[] expressed by the writer on a point that is not necessarily raised and not involved in the case, or on a point in which

---

[38] *In re Estate of Murphy, supra* note 2, 2014 WL 396249 at *3.

[39] *Id*. at *9.

[40] *Id*. at *1.

[41] *Id*.

[42] Brief for appellant at 37 (emphasis omitted).

[43] *Id*. (quoting *Sedlacek v. Welpton Lumber Co.*, 111 Neb. 677, 197 N.W. 618 (1924)).

the judicial mind was not directed to the precise question necessary to be determined to fix the rights of the parties."[44] Under this broader definition, which is consistent with the general meaning of "dictum" as a legal term of art,[45] the Court of Appeals' statement was dictum because the court's opinion regarding the business relationship between Clemens and Butch was not directed to the precise question necessary to be determined to fix the parties' rights in the surcharge action.

Clemens' corollary claim that the Court of Appeals' statement that she and Butch were business partners was a "factual finding," having the effect of a jury verdict, is similarly without merit.[46] A finding of fact is a "'determination concern[ing] whether the evidence showed that something occurred or existed.'"[47] The Court of Appeals' statement that Clemens was Butch's business partner was not a finding of fact in this sense because the parties in the surcharge action did not dispute whether Clemens and Butch were business partners, and the trier of fact did not have to decide that question.

Accordingly, because Butch never unequivocally stated in the surcharge action that Clemens was his business partner, and because the courts in that action did not adopt the position that Clemens and Butch were business partners, the district court did not abuse its discretion in finding that Emme was not judicially estopped or otherwise barred from denying

---

[44] *City of Lincoln v. Steffensmeyer*, 134 Neb. 613, 616, 279 N.W. 272, 273 (1938). See, also, *Securities Acceptance Corp. v. Brown*, 171 Neb. 406, 106 N.W.2d 456 (1960) (statement not dictum where question fairly arises in course of trial and there is distinct decision of question), *clarified on denial of rehearing on other grounds* 171 Neb. 701, 107 N.W.2d 540 (1961).

[45] See Black's Law Dictionary 569 (11th ed. 2019) (defining "judicial dictum" to mean opinion by court on question that is not essential to decision and therefore not binding).

[46] Brief for appellant at 37.

[47] *Quilang v. Dep't of Soc. & Health Services*, 25 Wash. App. 2d 164, 181 n.7, 527 P.3d 73, 83 n.7 (2022).

the existence of a business partnership between Clemens and Butch.

## 2. No Error in Rulings
### on Alleged Hearsay

Clemens' second assignment of error concerns the district court's rulings on alleged hearsay at the trial. Clemens argues that the district court improperly allowed Emme and Hupp to testify about statements made by Butch, but refused to allow her to introduce an exhibit containing her own prior consistent statement that she was Butch's business partner. Emme counters that the testimony regarding Butch's statements to which he understands Clemens to refer was not hearsay because it was not offered for the truth of the matter asserted. Emme also argues that the exclusion of Clemens' exhibit was proper or, alternatively, was not prejudicial to her.

[11] Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.[48] Hearsay is not admissible unless otherwise provided for in the Nebraska Evidence Rules or elsewhere.[49] However, by definition, statements are not hearsay if they are consistent with the declarant's testimony and are offered to rebut an express or implied charge against the declarant of recent fabrication, improper influence, or improper motive under Neb. Rev. Stat. § 27-801(4)(a)(ii) (Cum. Supp. 2022).[50]

### (a) Clemens Failed to Identify Any Objections
### That She Made on Hearsay Grounds

A cursory review of the bill of exceptions in this case shows that Clemens objected to certain statements at the trial on hearsay grounds and that the district court overruled some

---

[48] *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024).

[49] *Id*.

[50] See, e.g., *State v. Hibler*, 302 Neb. 325, 923 N.W.2d 398 (2019).

of those objections. However, Clemens does not cite any of those statements in her brief on appeal in support of this assignment of error. Instead, Clemens cites to portions of the bill of exceptions containing her oral motion in limine to bar Hupp from testifying as an expert on banking matters, as well as several statements to which she did not object at trial. This is insufficient for us to review Clemens' claim that Emme and Hupp were improperly allowed to testify about statements made by Butch. As an appellate court, we decline to scour the record on appeal in search of hearsay objections by Clemens that were overruled by the district court that might support her claim.[51]

### (b) Clemens Not Prejudiced by Exclusion of Her Exhibit on Hearsay Grounds

As to Clemens' claim that the district court improperly excluded evidence of her own prior consistent statement that she and Butch were business partners, there is no merit. At the trial in the present matter, Clemens sought to introduce an exhibit that contained the following excerpt from her deposition in the surcharge action:

Q. And what is your occupation?

A. I'm a business manager and a partner at O'Neill Body & Frame.

Q. And who is your partner?

A. Butch Emme, also known as Arthur.

Q. Is there a formal partnership arrangement?

A. No.

Q. How long have you been a partner?

A. 22 years almost, 21 and some months.

Clemens argues that her exhibit constituted a prior consistent statement, introduced to rebut what she characterizes as Emme's "allegation and inference . . . that she had recently

---

[51] See, e.g., *State v. Boppre*, 315 Neb. 203, 995 N.W.2d 28 (2023); *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021).

fabricated her [claim] that she and Butch were partners when she filed this lawsuit."[52]

[12-14] However, even assuming that the exhibit in question is not hearsay, Clemens was not prejudiced by its exclusion because immediately after the exhibit was excluded, Clemens herself testified that she had previously "testified in court" that Butch referred to her as "his business partner." In a civil case, such as this, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[53] The exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection.[54] In particular, where the information contained in an exhibit is, for the most part, already in evidence from the testimony of witnesses, as was the case here, the exclusion of the exhibit is not prejudicial.[55]

Accordingly, because Clemens failed to identify any hearsay that the district court admitted over her objections, and because she was not prejudiced by the exclusion of the exhibit containing her own prior statement that she and Butch were business partners, the district court did not abuse its discretion in its rulings on the alleged hearsay.

### 3. Proof of Business Partnership
### Under Nebraska Law

Before turning to Clemens' remaining assignments of error, both of which relate to the alleged existence of a business partnership between her and Butch, we briefly review the legal framework governing such partnerships in Nebraska.

[15,16] At all relevant times, Nebraska law defined a "partnership" as an association of two or more persons "to

---

[52] Brief for appellant at 47.

[53] *In re Estate of Walker*, 315 Neb. 510, 997 N.W.2d 595 (2023).

[54] *Hernandez v. Dorantes*, 314 Neb. 905, 994 N.W.2d 46 (2023).

[55] *Id*.

carry on . . . a business for profit."[56] Being "co-owners" of a business for profit does not refer to the co-ownership of property, but to the co-ownership of the business intended to garner profits.[57] Co-ownership distinguishes partnerships from other commercial relationships such as creditor and debtor, employer and employee, franchisor and franchisee, and landlord and tenant.[58]

[17,18] Co-ownership generally addresses whether the parties share the benefits, risks, and management of the enterprise such that (1) they subjectively view themselves as members of the business rather than as outsiders contracting with it and (2) they are in a better position than others dealing with the firm to monitor and obtain information about the business.[59] The objective indicia of co-ownership are commonly considered to be: (1) profit sharing, (2) control sharing, (3) loss sharing, (4) contribution, and (5) co-ownership of property.[60] However, the five indicia of co-ownership are only that; they are not all necessary to establish a partnership relationship, and no single indicium of co-ownership is either necessary or sufficient to prove co-ownership.[61]

[19] The party asserting the partnership relationship exists has the burden of proving that relationship by a preponderance of the evidence.[62] However, by statute, a person who receives a share of the profits of a business is presumed to be a partner in the business unless the profits were received

---

[56] See Neb. Rev. Stat. § 67-402(6) (Reissue 2018). See, also, *Peterson v. Massey*, 155 Neb. 829, 53 N.W.2d 912 (1952) (discussing definition of "partnership," then codified in Neb. Rev. Stat. § 67-306 (1943)).

[57] *In re Dissolution & Winding Up of KeyTronics, supra* note 13.

[58] See *id.*

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Heritage Bank v. Kasson*, 22 Neb. App. 401, 853 N.W.2d 868 (2014). Cf. *In re Dissolution & Winding Up of KeyTronics, supra* note 13.

in payment for services as an independent contractor or of wages or other compensation to an employee or under specified circumstances not relevant here.[63]

### 4. Motion for Directed Verdict and Motion to Set Aside Verdict and for New Trial Were Properly Overruled

Clemens' third assignment of error concerns the overruling of her motion for a directed verdict in her favor on the question of whether there was a business partnership between her and Butch, as well as the overruling of her subsequent motion to set aside the verdict and for a new trial. Clemens argues that Emme and Hupp testified at the trial in the present matter that she and Butch joined together to carry on a business for profit and share in the profits. As such, she argues that Emme and Hupp judicially admitted all the elements of a business partnership. Alternatively, Clemens argues that the other evidence presented at the trial established the existence of a business partnership. Emme disagrees.

### (a) Emme and Hupp Did Not Judicially Admit Elements Required to Prove Partnership Between Clemens and Butch

[20,21] A judicial admission, as a formal act done in the course of judicial proceedings, is a substitute for evidence and thereby waives and dispenses with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by an opponent is true.[64] Judicial admissions must be deliberate, clear, and unequivocal, and they do not extend beyond the intent of the admission as disclosed by its context.[65] Where a party testifies clearly and unequivocally to a fact within his or her own knowledge, such testimony may

---

[63] § 67-410(3)(c).

[64] *In re Estate of Lakin*, 310 Neb. 271, 965 N.W.2d 365 (2021), *modified on denial of rehearing on other grounds* 310 Neb. 389, 966 N.W.2d 268.

[65] *Id.*

be considered as a judicial admission.[66] That rule has particular application where the parties so testifying made no effort to retract, qualify, or otherwise explain the positive force of their own evidence.[67]

In the present case, even assuming that Hupp can be seen as an opponent, given that he resigned as copersonal representative before the trial, the statements by Hupp upon which Clemens relies fall short of judicially admitting all elements of a business partnership. Hupp did testify that he had no reason to believe that the various ventures here were anything other than for-profit businesses. However, while that is an element of a business partnership, it is not one that is disputed by the parties.[68]

Instead, the parties dispute whether Clemens and Butch joined together to carry on those businesses and share in the profits. On those questions, the majority of the relevant testimony by Hupp was less conclusive than Clemens suggests. In the excerpts from the bill of exceptions cited by Clemens, Hupp testified that Butch's "business components" changed over time; that O'Neill Truck Services "came into creation," apartments were "involved," and there was a cattle operation; and that the value of Butch's assets was greater at his death than in 1990. However, none of that testimony establishes that Clemens and Butch joined together to carry on those businesses and share in the profits. The same is true of Hupp's testimony that Clemens was "part of the transactions" with O'Neill Body and Frame from the time he began working as the company's banker in 1994 and that the ledgers for O'Neill Body and Frame showed payments to Clemens. Hupp never specified what Clemens' part in those transactions was.

---

[66] See, e.g., *Reicheneker v. Reicheneker*, 264 Neb. 682, 651 N.W.2d 224 (2002).

[67] *Id*.

[68] Cf. *In re Dissolution & Winding Up of KeyTronics, supra* note 13 (business qualifies as business for profit so long as parties intended to carry on business with expectation of profits).

And as to the payments to Clemens, Hupp disclaimed knowing whether she was "an employee, an independent contractor or a partner."

Clemens also points to Hupp's testimony that she was a co-owner of the O'Neill Body and Frame checking account from 1995 to 2007. However, as recounted above in our description of the trial, Hupp qualified that testimony by explaining that during that period, the bank listed persons as co-owners on sole proprietorship accounts in order to designate them as authorized signers.

Otherwise, the testimony by Hupp upon which Clemens relies was that he did not recall any discussions with her or Butch about whether they had a business partnership and he had no knowledge of who owned the cattle brand.

The testimony by Emme upon which Clemens relies similarly falls short of establishing a business partnership. Clemens points to Emme's statement that he heard Hupp's "testimony about the quantity and quality of work done by . . . Clemens in th[e] various operations" and would "agree with [it]." Hupp testified that Clemens "worked more than 40 hours per week . . . for many years" and was "a very hard worker." But people can work a significant number of hours and perform their work diligently without being partners in a business.

### (b) Other Evidence Cited by Clemens Was Insufficient to Warrant Directed Verdict in Her Favor

The other evidence cited by Clemens is similarly insufficient for us to find that the district court erred in failing to direct a verdict in her favor. As stated above, a directed verdict is proper only when reasonable minds cannot differ and can draw but one conclusion from the evidence.[69] Here, however, the evidence regarding the existence of a business partnership cut both ways, such that reasonable minds could draw differing conclusions.

---

[69] *In re Estate of Koetter, supra* note 7.

Clemens points specifically to evidence that she and Butch had "numerous bank accounts" that were jointly owned or were partnership accounts, described themselves as partners in the surcharge action, held themselves out to the community as business partners, referred to each other as "business partners," and operated the businesses as a partnership.[70] However, as was recounted in our description of the trial, there was also evidence that the bank responsible for the O'Neill Body and Frame checking account listed persons as co-owners on sole proprietorship accounts in order to designate them as authorized signers and that other accounts were solely owned by Butch. Butch's statements during the surcharge action about his relationship with Clemens were equivocal, as was previously explained. Likewise, while some witnesses recalled Clemens and Butch describing themselves as partners, others did not. The testimony was similarly inconclusive as to whether Clemens and Butch exercised cocontrol of the businesses.

Clemens also points to the fact that she "represented the partnership in numerous . . . civil litigation cases"[71] as evidence that there was a business partnership. In her testimony at the trial, Clemens specifically mentioned suits in small claims court and serving as the designated representative of O'Neill Body and Frame. Neither necessarily proves that she was a partner. An employee may represent a partnership, limited liability company, corporation, or other kind of organization or entity in small claims court and can also serve as its designated representative.[72] Insofar as Clemens claims that her "representation" went beyond that, we would note that a partnership must be represented by a member of the bar.[73] A

---

[70] Brief for appellant at 45.

[71] *Id*.

[72] See Neb. Rev. Stat. § 25-2803 (Cum. Supp. 2022).

[73] *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 857 N.W.2d 816 (2015) (citing *Anderzhon/Architects v. 57 Oxbow II Partnership*, 250 Neb. 768, 553 N.W.2d 157 (1996)).

legal proceeding in which a party is represented by a person not admitted to practice law is a nullity and is subject to dismissal.[74] Individuals can represent themselves in legal proceedings in their own behalf, but one who is not an attorney cannot represent others.[75]

### (c) Neither Setting Aside Verdict nor New Trial Was Warranted

Clemens' argument regarding the overruling of her motion to set aside the verdict and for a new trial is derivative of her claim that Emme and Hupp judicially admitted the elements of a business partnership. Because that claim fails for the reasons set forth above, the district court cannot be said to have erred in overruling Clemens' motion to set aside the verdict or for a new trial.

### 5. JURY VERDICT WAS NOT CLEARLY WRONG AND WAS SUPPORTED BY COMPETENT EVIDENCE

Clemens' fourth and final assignment of error concerns the jury's verdict in favor of Emme and against her. Clemens argues that the verdict was clearly wrong and was not supported by competent evidence. Clemens argues that she met her burden to show "'the association of two or more persons to carry on as co-owners a business for profit.'"[76] Specifically, as evidence of her and Butch's association, Clemens points to their alleged "refer[ences] to each other as 'business partners.'"[77] Similarly, as evidence of carrying on as co-owners, Clemens points to her and Butch's "operat[ing] numerous businesses and acquir[ing] real estate through their joint efforts over decades of work."[78] Emme, on the other hand, argues that

---

[74] *Steinhausen, supra* note 73.

[75] *Id.*

[76] Brief for appellant at 48.

[77] *Id*. at 49.

[78] *Id*. at 48.

there was "more than enough objective evidence on which to base the jury verdict in favor of [him]."[79]

We agree with Emme. As we explained when discussing Clemens' claim that the district court erred in failing to direct a verdict in her favor, the evidence regarding her and Butch's references to each other and their conduct of the businesses was mixed. However, Clemens had the burden to prove by a preponderance of the evidence that a business partnership existed between her and Butch. Even when reviewing an equity case de novo on the record where evidence is in dispute, we may give weight to the fact that the fact finder heard and observed the witnesses and accepted one version of the facts rather than another.[80]

Here, there was no written partnership agreement; there were no partnership tax returns ever filed; there was no real or personal property titled jointly in the names of Clemens and Butch; though five bank accounts were titled as co-owners, other bank accounts were not, and there was an explanation as to why Clemens was listed as a co-owner on the account for O'Neill Body and Frame for a period of time; there was no evidence that Clemens and Butch were jointly responsible for any indebtedness; there was no evidence that Clemens was responsible for any losses incurred by the businesses; and there was conflicting evidence as to whether Clemens had control over the business. As such, we find the jury determination to be correct.

## VI. CONCLUSION

There is no merit to Clemens' assignments of error regarding judicial estoppel, alleged hearsay evidence, her motion for a directed verdict, her motion to set aside the verdict and for a new trial, or the jury verdict in Emme's favor and against her. Accordingly, we affirm the rulings of the district court.

Affirmed.

---

[79] Brief for appellee at 28.

[80] *RGR Co. v. Lincoln Commission on Human Rights*, 292 Neb. 745, 873 N.W.2d 881 (2016).